Argued April 17, affirmed July 6, 1951

# DORSEY et ux. *v.* TISBY et ux.

## 234 P. 2d 557

164

*John R. Latourette, Jr.,* of Portland, argued the cause for respondents. On the brief were Latourette and Latourette, of Portland.

*John O. Sheldahl,* of Oregon City, argued the cause for appellants. On the brief were Sheldahl and Misko, of Oregon City.

Before BRAND, Chief Justice, and HAY, ROSSMAN, LUSK and WARNER, Justices.

ROSSMAN, J.

This is an appeal by the defendants, husband and wife, from a decree of the Circuit Court which granted to the plaintiffs, husband and wife, strict foreclosure of a real estate sales contract signed January 19, 1949, by the plaintiffs, as vendors, and by the defendants, as purchasers.

The defendants, as appellants, submit three assignments of error. The first claims that error was committed when the trial court refused to dismiss the complaint "in that the said contract was void and unenforceable for want of consideration." The second assigns error to the refusal to dismiss the complaint

"in that said contract if not found to be void for want of consideration, became a fully executed

and completely extinguished contract when the respondents accomplished their forfeiture, and as such was no longer capable of supporting any kind of action.''

The third assignment says:

"The court below erred in dismissing the counterclaim of the appellants, and in failing and refusing to grant the relief therein prayed for on the ground that the void contract of January 19, 1949, rather than the contract of December 22, 1948, was the contract between the parties.''

The parcel of property, about 2½ acres in extent, which is the subject matter of this suit, lies in a subdivision of Clackamas County known as Bryant Acres. Prior to December 22, 1948, the plaintiffs, as owners of the property, authorized a real estate agency known as Rogers & Vowels, to sell it. December 22, 1948, Rogers & Vowels signed a paper, entitled Earnest Money Receipt, which acknowledged that they had received from the defendants $1,000 as earnest money and part payment of the purchase price of the property. The receipt stated that the price was $8,750 and set forth the manner in which it should be discharged. Following the signature of the real estate firm was a statement over the signatures of the defendants in which they agreed to purchase the property at the price and upon the terms specified in the writing. The concluding part of the instrument was an acceptance and approval by the plaintiffs of the defendants' offer. January 19, 1949, the parties signed another instrument to which the defendants' brief refers as the "formal contract." It, too, was signed by the plaintiffs and the defendants. By the time of its execution the plaintiffs had received from Rogers & Vowels the initial payment of $1,000, and since that firm there-

upon had no further interest in the transaction, they, of course, did not sign the new, that is, the formal, contract. The latter, as also the earnest money receipt, required the defendants to pay $2,000 of the purchase money immediately after they had sold an item of real property in Portland which they owned and which was described in the instruments. The formal contract added to that requirement these words: "not later than Ninety (90) days from date of this contract." April 21, 1949, when it developed that the defendants were unable to discharge the payment of $2,000, the parties signed another instrument which, after mentioning the formal contract, said that, in consideration of a payment of $500 made by the defendants to the plaintiffs on that day, the latter granted an extension of 30 days in which to discharge the remainder of the $2,000 installment. The concluding words of the extension agreement were:

"Except as above stated, all of the covenants, terms and provisions of the above referred to Contract of Sale shall remain in full force and effect and shall be binding upon all the parties hereto."

The contract of sale mentioned in the quoted words was the formal contract signed by the parties January 19, 1949.

No part of the $1,500 payment was ever made and nothing further was paid upon the purchase price of the property after the payment of $500 on April 21, 1949. May 23, 1949, the plaintiffs notified the defendants that, due to their default, the plaintiffs declared the formal agreement "null and void." Thereupon the defendants recorded in the miscellaneous records of Clackamas County the formal agreement. August 25, 1949, the plaintiffs instituted this suit for its foreclosure.

We will now consider the first assignment of error which the defendants [appellants] term ''the principal question involved in this suit.'' Abstractly, they paraphrase the issue submitted by this assignment of error, as follows:

''Where an original contract between the same parties covering the same subject matter is modified by a new contract, if the undertaking by one party is simply to perform the whole or part of what he promised in the original contract, it will not support a promise by the other party to perform what he had previously agreed to do and something more.''

It is seen therefrom that the defendants contend that under the formal contract [the one which the parties signed January 19, 1949] the plaintiffs agreed to do no more than the covenants of the earnest money receipt exacted of them, but that the formal contract imposed upon the defendants the duty ''to perform what he [the defendants] had previously agreed to do and something more.'' In advancing their argument, the defendants direct attention particularly to the fact that, although the earnest money receipt did not require payment of the $2,000 installment until the defendants had sold their Portland property, the formal contract modified that provision by adding ''not later than Ninety [90] days from date of this contract.'' They claim that they received no quid pro quo for the purported surrender of the greater privilege. We add that the defendants concede that, under the provision as it was phrased in the earnest money receipt, payment was required within a reasonable time; see *Branch v. Lambert*, 103 Or. 423, 205 P. 995.

The defendants make no contention that they were induced to sign the formal contract by deceit, fraud,

concealment, overreaching or other improper means. They do not claim that they were unfamiliar with the meaning of any part of the formal contract when they signed it, and they do not say that something was omitted from it which should have been written into it. Their sole claim is that the formal contract lacked consideration. Without intending any disrespect for the contention just mentioned, it appears clear that it is an afterthought which occurred to the defendants when the loss of this property confronted them. Being forced to concede that the contract was a true integration of their agreement, they sought to defeat its validity by asserting lack of consideration. It is conceded that if that claim is unfounded, the rights of the parties are governed by the formal contract. For . example, the defendants' [appellants'] brief says:

"If the subsequent and modified contract of January 19, 1949, * * * was valid, then it must be conceded that the appellants are foreclosed from any relief at the hands of this Court."

The two instruments were not counterparts of each other. Although both had as their subject matter the same property, some of the attendant circumstances had undergone change after the earnest money receipt was given. For instance, (1) after December 22, 1948, the plaintiffs executed a mortgage, as the earnest money receipt contemplated they should do, which secured a note executed by them in the sum of $4,000. The mortgage described the property mentioned in the two instruments. The formal contract contained provisions concerning the amount of the mortgage and its payment which were, of course, absent from the earnest money receipt. (2) December 22, 1948, the real estate agency was paid its commission and delivered

to the plaintiffs the initial payment of $1,000 which the defendants had deposited with the firm as earnest money. Thereupon the firm had no further interest in the transaction and no occasion to be a party to any agreement pertaining to it. (3) The earnest money receipt, in delineating the reciprocal promises of the parties, was principally concerned with their rights in the event (a) the plaintiffs declined to approve the sale or their title to the property was defective, or (b) the plaintiffs had good title and approved the sale but the defendants thereafter neglected to meet the conditions of the earnest money receipt. The latter provided that if the first alternative occurred the earnest money should be returned to the defendants, but if the second alternative occurred the earnest money should be forfeited. After the plaintiffs had approved the offer made to them in the earnest money receipt, the provisions just mentioned were immaterial, but thereupon the parties had need for a contract which would delineate their rights in the event of a breach of the contract's covenants. The formal contract expressed those rights. The foregoing suffices to show that the two instruments were not confined to the same contractual domain.

The earnest money receipt expressly contemplated that it should be succeeded by a contract. For instance, one of its recitals, which is cast in prospective terms, refers to a "delivery of contract" and another speaks of "delivery of the deed or contract above mentioned." Further, the earnest money receipt, as already indicated, was primarily an agreement of a provisional character which stated the rights of the parties during the negotiation period and deemed that at the conclusion of that period it would be succeeded, through

novation, by a later agreement. Williston on Contracts, Rev. Ed., § 1865, prefers to limit the term "novation" to "a transaction in which the substituted contract has a new party." The section says:

> "Merger, substituted contract, * * * are the terms ordinarily used to cover contracts between the same parties which discharge prior obligations."

Corbin on Contracts, § 1293, declares:

> "The validity of the substituted contract is determined in the same manner as in the case of any other contract, with respect to such matters as mutual assent and consideration."

■ When the parties, on January 19, 1949, signed the paper which we shall hereafter term the substituted contract, they indisputably intended to extinguish and terminate the covenants expressed in the earnest money receipt. Clearly, they did not desire their rights to be governed by both instruments. The course taken by the defendants when they were unabe to discharge more than $500 of the $2,000 installment which the substituted contract rendered payable in April, 1949, and thereupon procured an extension of time, warrants the statement just made. It will be recalled that upon that occasion the defendants signed an agreement which said: "The above referred to contract of sale shall remain in full force and effect and shall be binding upon all the parties hereto." The defendants thereby acknowledged that their rights were governed, not by the earnest money receipt which had been terminated, but by the formal agreement. Likewise, when, about one month later, they recorded the formal contract, they again acknowledged that it was the integration of their agreement.

■■ The following is taken from 66 C.J.S., Novation, § 12, page 695:

"Novation by the substitution of a new obligation between the same parties must be supported by consideration which, in the transaction under discussion, is the extinguishment of the original obligation. This extinguishment is necessary, as the consideration for the first contract could not also support the second contract at the same time, with both in full force and effect, * * *.

"While the agreement to the discharge of each by the other from his liability under the original contract is deemed a sufficient consideration to support the new contract, this is true only where the prior agreement is executory on both sides, * * * ."

According to 39 Am. Jur., Novation, § 22, page 267:

" * * * In these cases the validity of the new promise and the discharge of the original debt are mutually dependent; they arise at the same time and result from the agreement of the parties that the existing debt shall be extinguished, and the first debtor discharged, in consideration of the new undertaking. * * * The mutual agreement, then, of the parties furnishes the consideration, and as between the original debtor and his creditor, the discharge of the original debt or contract is a sufficient consideration."

Williston on Contracts, Rev. Ed., § 1865, expresses the rule as follows:

"Novation necessarily involves the immediate discharge of an old debt or duty, or part of it, and the creation of a new one. There is no novation until this has been accomplished. In each of the above novations of a simple debt one unilateral contract has replaced another unilateral contract and one unilateral obligation has been discharged.

The discharge of the old debt or duty must serve as the consideration for the creation of the new one.''

██ A substituted contract, or a novation, in which the sole participants are the parties to the original agreement or obligation not only creates a new agreement or obligation, but also rescinds the former one. It is not unlike the emergence of a butterfly from a chrysalis. It is the two-fold character of the transaction, that is, the rescission and substitution, which constitutes the supporing consideration for both phases of the transaction. In the present instance, the earnest money receipt was executory when the substituted contract was signed January 19, 1949. It is manifest, as we have said, that it was the intention of the parties to substitute the new, that is, the substituted, contract for the earnest money receipt and in so doing terminate the covenants of the latter. Since such were the purposes of the parties, the cancellation of the earnest money receipt, and the substitution for it of the covenants contained in the substituted contract, constituted the consideration for the rescission and the substitution. We are satisfied that the defendants' contentions that the substituted contract lacked consideration are unfounded.

There is still another reason why the contentions of the defendants that the formal contract lacked consideration cannot be sustained.

The consideration clause of the substituted contract [the one which the parties signed January 19, 1949] begins as follows:

''Witnesseth, That in consideration of the stipulations herein contained, and the payments to be made as herein specified, the first party agrees

to sell, and the second party agrees to purchase, the following described real estate."

Then follow various provisions expressed in terms of mutual covenants wherein the respective parties bound themselves to such obligations as payment of purchase price, payment of taxes, the procurement of fire insurance policies, the delivery of a deed, the delivery of a policy of title insurance and the maintenance in good standing of the mortgage. In short, the expressed consideration was not, as in some transactions, the payment of a sum of money with a recital of its receipt, but a reciprocal exchange of promises.

■ Section 2-214, O.C.L.A., being this State's codification of the parol evidence rule, follows:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except  *  *  *  ."

Wigmore on Evidence, 3d ed., § 2425, says:

"This process of embodying the terms of a jural act in a simple memorial may be termed the Integration of the act, i. e. its formation from scattered parts into an integral documentary unity. The practical consequence of this is that its scattered parts, in their former and inchoate shape, do not have any jural effect; they are replaced by a single embodiment of the act.

"In other words: *When a jural act is embodied in a single memorial, all other utterances of the parties on that topic are legally immaterial for the purpose of determining what are the terms of their act.*"

For quotations from other texts to similar effect, see *Berry v. Richfield Oil Corp., et al.,* 189 Or. 568, 220 P. 2d 106, 222 P. 2d 224, and *Webster et ux. v. Harris,* 189, Or. 671, 222 P. 2d 644.

According to *Delzell v. Central Public Utility Corporation,* 56 F. Supp. 25:

"Before the parol evidence rule can be applied in any given situation the court must determine the preliminary question whether the documents upon which it is invoked were in fact intended by the parties as an integration of their entire agreement. Regardless of what state law applies (see footnote 2) that is the general principle which underlies the rule and is the law everywhere. This preliminary question is purely one of fact, and for the purposes of determining it all the circumstances of the transaction are relevant and must be considered."

■ Corbin on Contracts, § 586, after expressing that rule in similar vein, focuses it upon the problem now before us by stating:

"When it has been properly established that the terms of an agreement have been fully and correctly embodied in a specific writing, whether this is a deed of conveyance or not, the rule that this makes antecedent negotiations immaterial applies as definitely to what the agreed consideration was as to any other term or provision, although not to its payment or performance."

It will be observed that Corbin excepted from the operation of the rule evidence pertaining to consideration when the latter consisted of "payment or performance." An instance of that kind recently received attention by this court in *Biersdorf v. Putnam,* 181 Or.

522, 182 P. 2d 992, wherein it was said by Justice BAILEY:

> "We are therefore confronted with the proposition whether parol evidence is admissible to explain the phrase 'one dollar and other valuable consideration' appearing in the assignment, or to show what constituted the 'other valuable consideration'. It is the general rule that where the consideration for a written contract is mentioned therein merely by way of recital and is not a contractual term of the contract, the true consideration may be shown by either party, although it is different from that expressed. This is a well-recognized exception to the parol evidence rule."

The following is taken from *Shivers v. Liberty Building-Loan Assn.*, 16 Cal. 2d 296, 106 P. 2d 4:

> "As a matter of substantive law, where the parties to an agreement adopt a writing as the final and complete expression of that agreement an integration results; the act of embodying those terms in the writing becomes the contract. Under such circumstances, extrinsic evidence to vary the terms of the written instrument is excluded, because the writing is the contract itself."

*Berry v. Richfield Oil Corporation, et al.,* supra, *Webster et ux. v. Harris,* supra, and *Thorne v. Edwards,* 147 Or. 443, 34 P. 2d 640, are three instances selected at random from our Reports which applied the rule just quoted.

Restatement of the Law, Contracts, § 228, says:

> "An agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expression of the agreement. An integration is the writing or writings so adopted."

Section 238 of the same authority says:

> "Agreements prior to or contemporaneous with an integration are admissible in evidence

"(a) to establish the meaning of the integration when this is required for the application of the standards stated in §§ 230, 231;

"(b) to prove facts rendering the agreement void or voidable for illegality, fraud, duress, mistake or insufficiency of consideration;

"(c) to prove facts in a suit for rescission or reformation of the written agreement showing such mistake as affords ground for the desired remedy;

"(d) to prove facts in a suit for specific performance showing such mistake, oppression or unfairness as affords ground for denying that remedy."

We think it is manifest that the substituted contract was a complete integration of the agreement of the parties and that it was intended by them to be such. The defendants have never claimed anything to the contrary except their claim of invalidity. As we have said, they present no contention of fraud, mistake, deceit or incompleteness. Likewise, they do not even intimate that they failed to understand clearly the significance of the paper which they signed. They acknowledged at least four times that the substituted contract governed their rights. February 24, 1949, they paid upon the obligations evidenced by that instrument $74.71 to meet tax and insurance items. Two months later they paid $500 more upon the obligations expressed in that contract and at that time signed a new instrument which, after expressly mentioning the substituted contract, said that all of its provisions "shall remain in full force and effect and shall be binding upon all the parties hereto." Finally, when the defendants were unable to discharge any further payments, and the plaintiffs had notified them of the forfeiture of their rights, they recorded the

substituted contract, thereby announcing to all concerned that that paper was the embodiment and memorial of their agreement.

We quoted from § 238 of the Restatement, including the part which speaks of resort to a prior agreement, for the purpose of establishing "insufficiency of consideration." Accompanying § 238 is illustration 2, which reads as follows:

"A and B make an integrated agreement by which A promises to complete an unfinished building according to certain plans and specifications, and B promises to pay A $2,000 for so doing. It may be shown that by a contract made previously A had promised to erect and complete the building for $10,000; that he had not fully completed it though paid the whole price. This evidence is admissible because it established that there is not sufficient consideration for the new agreement, since A is promising no more than he is bound by his original contract to perform."

In the illustration of which we have just taken notice the first contract was still in effect when the second was signed. Such was also true in *Cameron v. Edgemont Investment Co.*, 149 Or. 396, 41 P. 2d 249, and other decisions upon which the defendants depend. But, in the case now before us, the substituted contract extinguished the covenants contained in the earnest money receipt.

There is nothing mysterious or whimsical about the operation of the parol evidence rule. It does not run contrary to the expectations of parties who sign contracts. When the parties to a transaction carefully prepare a written memorandum of their agreement and then sign it, they certainly intend that the document which they produce shall possess evidential value. If

thereafter none of the signing parties can show as a matter of fact that any word or tittle is in error, they expect that the courts will give effect to the document, unless by chance the agreement runs afoul of the law. That is exactly the result which the parol evidence rule accomplishes. The first duty exacted by the rule of a judicial officer is to search through the evidence and ascertain whether or not the parties made an integration of the agreement. If he finds that they did not, the rule has no application and may be cast aside. But if they made an integration, all of their previous negotiations, whether written or oral, must be disregarded as evidence of the contract. The integration thereupon is deemed the sole evidence of their agreement, except, of course, for matter which it may have set forth in recital form, as, for example, the receipt of a given sum as consideration. The parol evidence rule protects the integration, but nothing else. It protects it by disregarding the preliminary negotiations as evidence of the agreement and by looking solely to the integration.

■ We conclude from the foregoing that the earnest money receipt cannot be regarded as evidence of the agreement of the parties. It was superseded January 19, 1949, when the parties signed the substituted contract. We dismiss the first assignment of error as lacking in merit.

We come now to the second assignment of error which is quoted upon a preceding page of this opinion. It is based upon a contention that after the plaintiffs notified the defendants that, due to their breach of the substituted contract, the latter was declared "null and void," the plaintiffs could not later institute this suit for the foreclosure of the contract. The defendants

argue that since forfeiture is expressed in the substituted contract as an alternative remedy, the election to declare forfeiture terminated the agreement. It will be recalled that after the defendants received the notice of forfeiture they recorded the contract. The defendants suggest that if the plaintiffs needed a remedy, a suit for removal of the cloud, rather than foreclosure, was available.

The following, taken from 55 Am. Jur., Vendor and Purchaser, § 631, page 1024, expresses the rule upon which the defendants rely:

"* * * Although the vendee may assert a waiver of a right of forfeiture or of a prior forfeiture, based upon the vendor's adoption of an inconsistent remedy, such as bringing a suit to foreclose his vendor's lien or contract, the vendor cannot, over the objection of the vendee, maintain such a suit after having given an effectual notice of forfeiture. It would be a novel and unjustifiable extension of the doctrine of waiver to permit a vendor to forfeit the contract, discharge the obligations of both himself and the vendee, and at a future time, when circumstances might work in his favor, reinstate the contract and its liabilities by his own act, without the consent or acquiescence of the vendee."

This court has twice held that suits of this character may be maintained, notwithstanding the fact that the vendor, before instituting the suit, declared a forfeiture: *Edwards v. Wirtz,* 167 Or. 625, 118 P. 2d 114, and *Flanagan Estate v. Great Central Land Co.,* 45 Or. 335, 77 P. 485. In law, especially when property rights are at stake, consistency, that is, adherence to precedent, is a greater virtue than strict logic. And it may be that Justice Holmes was right when he declared that experience, rather than reason, is the source of law. Had

the plaintiffs instituted a suit for the removal of the cloud instead of praying for the foreclosure of the contract, the court could not have offered the defendants an opportunity to meet their obligation and save their investment. It appears to us as not illogical to say that when the plaintiffs filed this suit they withdrew their notice of forfeiture and reinstated the contract. We find no merit in the second assignment of error.

The third assignment of error presupposes a holding upon our part that the earnest money receipt, and not the substituted contract, governs the rights of the parties. Since we have held to the contrary, it is unnecessary to proceed with that assignment of error.

The foregoing disposes of all of the contentions of the parties. This opinion does not mention all of the authorities cited in the appellants' brief, but, nevertheless, all of them have received careful attention.

The decree of the Circuit Court is affirmed.