Argued October 3, affirmed November 14, 1951

# TRACY and BAKER *v.* CITY OF ASTORIA
## 237 P. 2d 954

119

*Jay H. Stockman,* of Astoria, argued the cause and filed a brief for appellants.

*James L. Hope* and *M. E. Reynolds,* of Astoria, argued the cause and filed a brief for respondent.

Before BRAND, Chief Justice, and HAY, LUSK, LATOURETTE and TOOZE, Justices.

HAY, J.

Action for damages against the City of Astoria for injuries to plaintiffs' realty by landslides allegedly caused by defendant's negligence.

The complaint alleges: Plaintiffs own and reside on lot 9, block 13, City of Astoria, Oregon; from Grand Avenue, where plaintiffs' residence stands, the land rises southerly in a steep incline; Irving Avenue is two blocks south of Grand Avenue; at 18th Street, where Irving Avenue crosses a ravine, defendant has from time to time dumped large amounts of material into the ravine each year, including 1948; such material has materially added to the weight of material which has been washed down upon plaintiffs' premises; there are numerous springs and water currents in the ground, "the super-added weight of which renders any attempt to make a fill thereon dangerous, all of which facts the defendant well knew;" there is no footing, which fact defendant has known "for years, so that the defendant has known that there was no way of securing the material dumped into said ravine;" "an improper and wholly unserviceable fill" was dumped by defendant into the ravine; defendant well knew that such material must in time be projected upon plaintiffs' property; the dumped material was of such consistency that the waters flowing down the side of the hill caused it to be washed down so as to damage plaintiffs' premises; such material accumulated "as a tremendous moving mass and crept down the hillside and onto the premises of the plaintiffs, thereby forcing a change of elevation and exerting a tremendous pressure against the surface ground of the plaintiffs;" thereby the trees and foliage and fish pond on plaintiffs' property were

displaced, the foundation of plaintiffs' house was cracked and "rendered unsatisfactory," "increasing dirt and encroachments have been completely destroying" the value of the premises as a home, and "have made such dirt encroachment a menace to the habitation of said premises;" plaintiffs have notified defendant repeatedly of these circumstances and have requested it to take steps to curb the advance of the fill material before it reached plaintiffs' property, but defendant failed to take any action in that regard; and plaintiffs have been damaged in the premises in the sum of $6,500, in which amount they demanded judgment.

Defendant made general denial, with specific admissions as follows: That the lands "lying south of Grand Avenue and 18th Street in said city rise in a very steep slope and constitute a ravine, drain and ditch and that Irving Avenue crosses such to the south of Grand Avenue;" that "during the construction of what is known as the Irving Avenue bridge, the defendant did make a small fill on Irving Avenue to the west of the bridge." Affirmatively, defendant pleaded: Plaintiffs purchased and took possession of lot 9 on or about October 13, 1945, and of adjoining lot 10 on or about June 5, 1946; the south boundary of said lots fronts on Grand Avenue immediately east of 18th Street; extending from about the intersection of Grand Avenue and 18th Street southerly, there exists and from time immemorial has existed "a steep slope, gulch or ditch in which the flow of surface water would gather;" Grand Avenue east of 18th Street has never been improved, and upon such unimproved part of Grand Avenue and upon said lot 10 there existed "a large amount of soil, rock and other materials that acted as a toe, barrier and support for the hill and slope extending southward

therefrom toward Irving Avenue;" defendant from time to time, to control the flow of water in said ravine or gulch, constructed a drain and sewer system, and, at the time of the purchase of said lots by plaintiffs, such system was in good workable condition, and so remained until "disrupted by the acts hereafter alleged;" plaintiffs, or their immediate predecessors as owners of lot 10, while plaintiffs were residing on lot 9, "caused the soil, rock and other materials to be moved by motor power from" lot 10 and from Grand Avenue "southerly adjacent thereto," without defendant's knowledge or consent, and thereby removed the lateral support to "such hill and slope to the south," causing "the soil and lands constituting a part of and adjacent to said ravine, gulch or ditch to move downward," and said drainage system to become broken, creating "a movement of the lands known as" said lot 9; plaintiffs, at the time of purchasing said lots, knew, "or by the use of ordinary intelligence should have known," that the lots lay at the bottom of said ravine, that the topsoil and subsoil extending southward therefrom "was such as to create more or less sliding at all times, and that the area immediately adjacent to the south of said lots was and has been for many years subject to slides by reason of surface water as well as subterranean water;" and that the proximate cause of the damage claimed by plaintiffs, if any, was the unauthorized removal of the soil, etc., aforesaid, constituting the lateral support of the slope, combined with the "sliding nature" of said slope or ravine.

Replying to the affirmative answer, plaintiffs alleged: They purchased lot 9 on or about June 5, 1944, and lot 10 on May 7, 1947; Grand Avenue, east of 18th Street, has been improved only to the extent that a

graveled roadway has been in use to the east side of lot 9, where plaintiffs' garage was situated until displaced by the slide; denied that lot 10 served or acted as a barrier for the support of the hill or slope south thereof; alleged and admitted that the city constructed a drain system to care for the water from said ravine, and alleged "that the failure of the city to repair and maintain said drainage system in conjunction with the dumping of material into said ravine, as alleged in plaintiffs' complaint, has caused the drainage [sic] to the plaintiffs' property;" alleged that they repeatedly requested the city to repair the drainage system, but it refused to do so; denied that they ever removed any material from lot 10; alleged that, "although some grading was done by people previously owning lot 10," at no time was there any substantial change "in the grading" thereof; alleged that lot 10 "was auctioned off by the City of Astoria subsequent to the purchase of" lot 9 by plaintiffs, and that "no restrictions or limitations were placed upon the property concerning the grading of said property nor any caution or admonitions given to the purchaser concerning the use or occupancy of said land;" alleged that the danger to their premises was occasioned "by reason of the failure of the drainage system which the defendant city installed and to the grading done from time to time in connection with Irving Avenue;" that the city well knew that maintenance of the drainage system was essential to the control of said hill and that the placing of material at or incidental to Irving Avenue was hazardous and likely to cause damage on account of its effect upon the drainage of said gulch both in the control of the water and in its effect upon the drainage system; alleged "that the whole fault and dangerous condition arose and existed by reason of the negligence

and negligent acts of the City of Astoria;" denied all other allegations of the affirmative answer.

On motion, the allegations respecting lot 10 having been auctioned by the city without restrictions or limitations upon its use, etc., were stricken from the reply as irrelevant and redundant. Thereafter plaintiffs filed an amended reply, containing, in lieu of the stricken part, an allegation to the effect that lot 10 "was auctioned off by the City of Astoria subsequent to the purchase of lot 9" by plaintiffs, "and that said lot was sold by the City of Astoria for the express purpose of being used as a building lot." Such allegation, in turn, was stricken, upon motion, as redundant and immaterial.

Trial by jury resulted in a verdict for defendant. Judgment was entered accordingly, and plaintiffs appeal.

Irving Avenue is the main east and west thoroughfare through Astoria. Grand Avenue is two blocks north of Irving Avenue and parallel thereto. As shown upon the city plats, both streets are intersected at right angles by 18th Street, which, however, has not been improved south of its intersection with Grand Avenue. A ravine or gulch extends from approximately the line of Grand Avenue upon a steep slope southerly to and beyond Irving Avenue. We gather from the evidence that 18th Street, as laid out, lies approximately along the bottom of this gulch. At its intersection with 18th Street, Irving Avenue crosses the gulch partly upon a fill and partly upon a trestle bridge.

The rainfall in that region is heavy. A clay soil covers the sedimentary shale of the gulch. Rain water percolates between the soil covering and the shale, and causes the surface of the shale to be continually

slick or slippery. This tends to bring about occasional landslides, and there was evidence that the gulch has a long history of landslides and sloughing. More than 20 years before the trial of this case, the city installed an elaborate drainage system in the gulch, which facilitated rapid drainage of the excess water.

There was evidence that, at the time when plaintiffs purchased lot 9 in 1944, there was no sign of any disturbance or movement of the ground thereof. Thereafter, Mrs. Nielsen, a sister of one of the plaintiffs and daughter of the other, purchased lot 10 from the city. She caused that lot to be leveled by removing earth and materials from the south portion to the north, and by moving earth and materials onto the lot from the adjacent unimproved area of Grand Avenue. Such grading or excavating extended at least 20 feet into Grand Avenue, and cut into the hillside sufficiently to leave standing five or six feet in mid-air a concrete manhole, the top of which theretofore had been level with the surface of the ground.

The drainage system installed by the city was destroyed or rendered ineffective during the winter of 1946-1947. Plaintiffs contend that the damage to their property resulted from the city's negligence in failing to restore the drainage system in conjunction with its negligence in dumping additional fill material in the neighborhood of the 18th Street bridge, although only the latter specification of negligence was alleged in the amended complaint. The city's theory was that the movement of earth resulted from a very heavy rainfall during the winter above mentioned, coupled with the removal of lateral support of the hillside by the excavation of dirt and other materials from the surface of lot 10 and from unimproved 18th Street adjacent thereto, to which we have referred. The earth move-

ment was gradual, and eventually extended from about the line of Grand Avenue to and beyond the 18th Street bridge, where it resulted in considerable injury both to the bridge and to the filled approaches thereto. This injury was repaired by the city by extending the bridge and restoring the damaged fill. The work was done by a private contractor, who, at the same time, dumped upon a piece of private property immediately south and west of the bridge some excess material which he had excavated. Such dumping was done without the knowledge or consent of the city, and was stopped by the city engineer as soon as he heard that it was being done.

Plaintiffs' original reply contained the following allegation:

"* * * The plaintiffs further allege that Lot 10, Block 13, was auctioned off by the City of Astoria subsequent to the purchase of Lot 9, Block 13, by the plaintiffs, and that no restrictions or limitations were placed upon the property concerning the grading of said property nor any caution or admonitions given to the purchaser concerning the use or occupancy of said land."

On motion, such allegation was stricken as irrelevant and redundant, and plaintiffs assign such striking as error.

Defendant's answer contained the following allegation:

"That plaintiffs knew at the time of their purchase of said lots, or by the use of ordinary intelligence should have known, that the location of their said lots was at the bottom of said ravine, and that the topsoil and subsoil extending southward therefrom was such as to create more or less sliding at all times."

Plaintiffs do not contend that the city was required to insert in its deed of conveyance of lot 10 any restriction or limitation respecting the use of the property, but argue that, because a substantial sum was paid to the city for the land, it was competent for them to give evidence of the circumstances under which it was purchased, as a legitimate and logical explanation of the allegations of the answer above set forth.

The fact that the property was "auctioned off" by the city would appear to be immaterial, as it is not claimed that there was any covenant on the part of the city, express or implied, relied upon by the vendee, warranting the condition of the property, as, for example, that it was not subject to sliding, or that it was suitable for building purposes. There was testimony that the city auditor told the vendee, at the time when she purchased lot 10, that it was a good building lot, but no suggestion is made that this was more than an expression of opinion, or that the statement was made officially and within the scope of the auditor's authority. It was, therefore, not binding upon the city. 38 Am Jur, Municipal Corporations, § 669. In our opinion, no error was committed in striking the allegations that the lot was auctioned by the city without restrictions or cautions respecting its use.

During plaintiffs' case in chief, they sought further to amend their amended complaint by inserting therein, in respect of the movement of soil and other material therein alleged, the following: "and that failure to maintain proper drainage was [an] essential factor to said movement." As authority for the allowance of such amendment they cite *Oliver v. Burg,* 154 Or 1, 15, 58 P2d 245, wherein it was said:

"It is well settled in this state that the power

to amend a pleading should always be exercised in furtherance of justice and that, unless the circumstances of the case are such that an injustice would result to the opposite party from the granting of the motion to amend, an amendment should be allowed as a matter of course: Flint v. Phipps, 20 Or. 340 (25 P. 725, 23 Am. St. Rep. 124)."

■ Leave to amend a complaint after evidence has been introduced is usually within the sound discretion of the court. 71 CJS, Pleading, § 287b(2); *Goff v Elde,* 132 Or 689, 692, 288 P2d 212; *Green Mountain Log Co. v. Columbia & Nehalem River Railroad,* 146 Or 461, 469, 30 P2d 1047. In *Oliver v. Burg,* supra, a suit to quiet title to mining claims, it was held that defendants should have been allowed, on motion, to amend their answer to meet an issue, the extent of which was first disclosed by the introduction in evidence by plaintiff of a map identifying certain mining ground claimed by her. The holding was correct, although *Flint v. Phipps,* the case which it cites as authority, did not deal with amendment of pleadings, but only with amendment of an execution.

■■ Under our statute, the court has discretion, at any time before the cause is submitted, to allow a complaint to be amended to conform to the facts proved, provided the amendment does not substantially change the cause of action. § 1-1006, OCLA; *Elliott v. Mosgrove,* 162 Or 507, 534, 546, 91 P2d 852, 93 P2d 1070; *Asher v. Pitchford,* 167 Or 70, 76, 115 P2d 337. But before such amendment is permitted, evidence upon which to base it must have been received without objection. *Mendenhall v. Harrisburg Water Co.,* 27 Or 38, 42, 39 P 399; *Bishop v. Baisley,* 28 Or 119, 127, 41 P 937; 71 CJS, Pleading, § 285f. In the case at bar, defendant, from the beginning, objected to evidence tending to prove that negligent failure to maintain and repair

the drainage system contributed to the cause of the landslide. No such evidence was received, and refusal to allow the amendment was not error.

■ The contractor who installed the drainage system for the city was asked by plaintiffs if he recalled whether the work was done because of a slide which had taken place. Defendant objected, on the ground that there was no issue in the case with reference to the drainage system having had anything to do with the slide. The court sustained the objection, not on the ground stated, but because the question called for a conclusion. The court's ruling was not responsive to the objection, but if counsel had desired a specific and definite ruling he should have requested one. 3 Am Jur, Appeal and Error, § 271, notes 9 and 10. Not having done so, we must assume that he was satisfied, and thereby waived the right to a specific ruling upon defendant's objection.

A civil engineer, who, in July, 1949, made an examination of the locality affected by the landslide, was asked, as a witness for plaintiffs, to what extent he had ascertained in his examination that the drainage system was not operating. To this the city objected on the ground that it was not charged with having a defective or inadequate drainage system. The objection was sustained, and error is assigned thereon.

Plaintiffs' amended reply alleged that failure on the part of the city to repair and maintain its drainage system, in conjunction with the dumping of material into the ravine, caused the damage complained of. They argue that the complaint and reply should be construed together, and that, no objection having been taken to the reply, its allegations should be liberally construed with a view to substantial justice between the parties. *Patterson v. Patterson,* 40 Or 560, 563,

67 P 664; *Lavery v. Arnold,* 36 Or 84, 90, 57 P 906, 58 P 524; *Pioneer Hardware Co. v. Farrin,* 55 Or 590, 594, 107 P 456; *Eagle Cliff Fishing Co. v. McGowan,* 70 Or 1, 6, 137 P 766.

But plaintiffs must prevail, if at all, upon the matters alleged in their complaint. The allegations of a complaint should be clear and unequivocal, so that defendant may have notice of what is intended to be proved at the trial. *Hill v. Wilson,* 108 Or 621, 636, 216 P 751; *Winans v. Valentine,* 152 Or 462, 466, 54 P2d 106; *Murray v. Lamb,* 168 Or 596, 602, 115 P2d 336, 124 P2d 531. The amended complaint contained no allegation of negligence by failure to construct or maintain a drainage system. The general rule is that the reply cannot aid the complaint by broadening its scope or adding new grounds of relief. 41 Am Jur, Pleading, § 179.

Assuming, however, *arguendo,* that the allegations of the reply which alleged failure to maintain the drainage system did not constitute a departure in pleading, such allegations should have been set forth as new matter. 41 Am Jur, Pleading, § 178. The affirmative answer alleged that the city had "from time to time, to control the flow of water in said ravine or gulch, erected and constructed a drain and sewer system * * *, and [that] at the time of the purchase of said lots by said plaintiffs such drain and sewer system was in good workable condition, and remained in such condition until disrupted by the acts" of plaintiffs or their immediate predecessors in title as owners of lot 10. Further, as we have stated, such pleading alleged facts with reference to the grading of lot 10, and charged that such grading was the cause of the landslide and of the "disruption" of the drainage system. The amended reply admitted that defendant

had erected and constructed a drainage system as alleged in its affirmative answer; and in that connection, but not as a specific and separate allegation of new matter, alleged "that the failure of the city to repair and maintain said drainage system in conjunction with the dumping of material into said ravine, as alleged in plaintiffs' complaint, has caused the drainage [sic] to the plaintiffs' property," and that plaintiffs had "repeatedly requested the city to repair its drainage system in order to protect the property of the plaintiffs, which the city" had refused to do. Further, plaintiffs denied that they knew or had any reason to believe that lot 9 was in a dangerous or unsatisfactory location, and in this connection, but not as a specific and separate allegation of new matter, alleged that for some time subsequent to May 7, 1947, "the danger occasioned was by reason of the failure of the drainage system which the defendant city installed and to the grading done from time to time in connection with Irving Avenue and the city well knew that the maintenance of the drainage system was essential to the control of said hill and that the placing of material at or incidental to Irving Avenue was hazardous and likely to cause damage on account of its effect in the drainage of said gulch both in the control of the water and in its effect upon the drainage system."

These allegations of the reply cannot be considered as allegations of new matter. In their form, they are merely argumentative denials of allegations of the affirmative answer. The questions of the sufficiency of defendant's drainage system and of its destruction, as alleged in the affirmative answer, were properly put at issue by general denial in the amended reply.

When an answer contains new matter constituting a defense or counterclaim, replies, under our system of code pleading, may consist of general or specific denials of each allegation controverted by defendant, and of allegations of any new matter, not inconsistent with the complaint, constituting a defense to the new matter. § 1-715, OCLA. The defense of new matter should be averred with the same degree of care that should be exercised in alleging in a complaint the facts constituting the cause of action. *Hubbard v. Olsen-Roe Transfer Co.*, 110 Or 618, 627, 224 P 636. In that case, we quoted with approval on p 627 the following:

> " 'It is elementary that a defense of new matter should be pleaded; and, as new matter must of necessity be a distinct defense from a denial, it follows that it cannot properly be associated or mingled up with denials general or specific in one paragraph or plea. For the same reason, each defense of new matter must necessarily be complete and single, as much so as each cause of action, and should be separately stated in a plea by itself. * * *
>
> " 'The overwhelming weight of judicial opinion has, with almost complete unanimity, agreed upon the principle which distinguishes denials from new matter, and determines the office and function of each. The general denial puts in issue all the material averments of the complaint or petition, and permits the defendant to prove any and all facts which tend to negative those averments or some one or more of them.' Pomeroy's Code Remedies, §§ 566, 567."

The allegations of new matter in the amended reply were "associated or mingled up with denials general or specific in one paragraph or plea," not "complete and single," and not "separately stated." They raised no issue apart from those raised by the general and specific denials. There was no error in the court's

ruling sustaining the objection to the question asked of the civil engineer respecting the condition of the drainage system.

In case it may be thought that our insistence, in this case, upon observance of a rule of pleading runs counter to the interests of justice, be it said that, apart from the desirability for orderly pleading, the court's refusal to permit the witness to testify as to the extent of the disrepair of the drainage system could not have prejudiced plaintiffs in any event, as defendant's answer specifically alleged the "disruption" of the system.

Plaintiffs offered in evidence a certified copy of an ordinance of the city, passed and approved June 18, 1928, approving, confirming and adopting a resolution declaring the intention of the common council to improve that part of Irving Avenue involved herein. The proposed improvement consisted of constructing concrete curbs and sidewalks, laying a six-inch sewer, providing for necessary drainage, constructing a guard' fence, regrading existing macadam, placing necessary new rock, providing a base six inches in thickness, and paving the street between curbs with a two-inch asphaltic concrete pavement. Counsel for plaintiffs stated that the exhibit was offered "for the purpose of showing the foundation of the engineers' determination of the causes for the slippage of material * * * through this canyon which was the, not the first but one of the fills that precipitated the condition which has brought the present fills down there; by that I mean it is within the last two or three years, which we contend is a definite part of the history of the slippage that has caused this damage." He contended that the ordinance would show that the city made the fill which precipitated the breaking loose of the ground, and knew that it would

create a dangerous situation with respect to slippage of material.

Counsel for the city objected, on the ground that they had specifically moved to make the complaint more definite and certain by stating the years in which plaintiffs contended that there had been any filling or dumping done by the city, and that plaintiffs had been unable to comply with such motion; that there was nothing in the complaint to put the city on notice that plaintiffs were going to try out each dumping of material that went into the ravine and gulch; that the city could not be expected upon the allegations of the complaint to meet the sort of evidence now offered; and that the witnesses necessary to controvert such evidence were dead or had left the country.

The court sustained the objection, and in that connection ruled that plaintiffs would be permitted to prove the fact that there had been sliding ground in that ravine, but that it would not be appropriate to place before the jury what the city may have done "that far back."

It may very well be that the making of a heavy fill at or in the neighborhood of the head of the ravine may have had something to do with aggravating the naturally unstable condition of the soil of the ravine. The ravine and hillside have had a long history of landslides, which have involved several lawsuits, some of which reached this court on appeal. See *Giaconi v. City of Astoria,* 60 Or 12, 113 P 855, 118 P 180, 37 LRA NS 1150; *Warren v. City of Astoria,* 67 Or 603, 135 P 527; and *Lovell v. City of Astoria,* 71 Or 57, 141 P 1199. There was nothing in the amended complaint giving notice that plaintiffs intended to offer proof of acts which the city had done in the distant past. It was entirely proper, we think, for plaintiffs

to have shown that the soil of the ravine had been and was subject to landslides, and that the dumping of fill material at the head of the ravine would have a tendency to aggravate this condition. We think, however, that the court was right in preventing them from going into ancient history to the extent of introducing in evidence the twenty-year old ordinance in question. Plaintiffs were not prejudiced thereby, not only because the evidence would have been improper under the allegations of their amended complaint, but also because it would have been redundant and immaterial, as defendant's answer had admitted that "the topsoil and the subsoil extending southward" from plaintiffs' lots "was such as to create more or less sliding at all times, and that the area immediately adjacent to the south of said lots was and has been for many years subject to slides from surface water as well as subterranean water."

Moreover, in *Giaconi v. City of Astoria,* supra, 60 Or 12, 35, 113 P 855, 118 P 180, 37 LRA NS 1150, this court held:

"* * * The right of the city to decree by ordinance that Irving avenue should be improved by filling it to the established grade may be well admitted; and it may be further conceded that *the terms of the ordinance itself would not constitute sufficient proof of negligence on the part of the city.* * * *"* (Emphasis suppplied.)

█ Plaintiffs sought to introduce in evidence a certified copy of a report to the defendant city by the city surveyor, dated September 8, 1909, showing that on August 19, 1908, there had been placed on Irving Avenue between 18th Street and 19th Street, 12,296 cubic yards of embankment, and that an additional 12,464 cubic yards would be required to complete the

fill. The same objections were made to the reception of this exhibit in evidence as were made to the offer of the city ordinance above referred to, and such objections were sustained by the court. It is argued that this exhibit was competent and material. Counsel says: "Here was a hill that had damaged this and the adjacent property, and the same hill existed here, and the same slope [,] and additional fill was made, and the drainage system was not taken care of by the city."

Evidence regarding a fill made by the city 40 years ago was, in our opinion, too remote in point of time to be admissible, especially in view of the fact that, in the interim, it was insisted that there had been no condition of permanent stability of the soil of the ravine. 38 Am Jur, Negligence, § 313; 20 Am Jur, Evidence, § 306; Comment Note, 80 ALR 446, 447; 2 Wigmore, Evidence, 3d ed, § 437. We hold that the exclusion of the exhibit was proper.

Error is assigned upon the giving of the following instruction:

"I instruct you that any materials dumped in the streets or ravine by private parties without the consent of the city, would not in this case create any responsibility on the part of the city which could be a basis of claim for damage against it, and particularly, I must instruct you that any materials which may have been shown by the evidence to have been dumped on the property of Captain Ash cannot in any way be considered by you as a basis for liability against the city, because there is absolutely no evidence that any such material was put there under the direction and control of the city. The only evidence is that it was put in by some other person who had a contract with the city to haul it away and if such contractor put the material on the property of Captain Ash, that could not create

any liability against the city and you must not consider it as creating any such liability.''

■ We observe that counsel for plaintiffs has failed to set out in his brief what exception he took to the giving of the instruction in question. Rule 13 of the rules of this court requires that such exception shall be set out in haec verba. Moreover, we have examined all the exceptions to the charge actually taken by plaintiffs, and do not find that any specific exception was taken to the giving of this instruction. Under those circumstances, we cannot consider the arguments now made by plaintiffs in support of this assignment.

We find no reversible error in the record. The judgment is affirmed.