Argued May 6, affirmed October 21, petition for rehearing
denied November 17, 1964

## STERNES *v.* TUCKER ET AL
395 P. 2d 881

*Jesse R. Himmelsbach, Jr.,* Baker, argued the cause and submitted a brief for appellant.

*David C. Silven,* Baker, argued the cause for respondents. On the brief were Banta, Silven & Young, Baker.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Denecke, Justices.

DENECKE, J.

Buyer Sternes sued real estate broker Tucker and seller O'Bryant for $5,000 earnest money previously paid Tucker. The jury found for the plaintiff; however, the court granted judgment *n.o.v.* for the defendants.

The principal issue is whether plaintiff's obligation was subject to an oral condition which had not been fulfilled. The complaint alleges that the earnest money agreement was "subject to, and conditioned thereon, however, upon plaintiff's father loaning plaintiff the money for the down payment of $20,000 to be made in addition to said deposit."

In the spring of 1958 the parties commenced negotiations for the purchase of a farm. In June plaintiff Sternes told defendant Tucker that he needed outside financing to buy the farm and that any sale would have to be contingent upon getting the money from his father. About July tenth, Sternes told Tucker that "his father was the key-man in this particular deal because he would be the one that was furnishing the financing."

On July twelfth, Sternes made the following written offer:

"I will purchase said ranch for a total purchase price of $65,000.00 payable $25,000.00 down and the balance payable at $5,000.00 a year with interest at 5%. The balance to be represented by a note and first deed of trust upon the property. It is understood that I will receive a marketable title to said property and that title will be passed by a warranty deed.

"This offer is made upon condition that prior to the closing of this transaction I am able to find a person interested in leasing said property and who does lease said property for a period of from 3-5 years at an annual cash rental of $6,000.00 or more payable in advance, the first payment under said lease to be made concurrent with the closing of this transaction so that $5,000.00 of said rental can be applied to the down payment on said property. Said lease is to contain the ordinary provisions included in leases in the immediate area and shall provide that lessor is to pay taxes.

"At such time as this offer is accepted I will forward the sum of $5,000.00 to be held in your trust account pending the closing of this transaction. Prior to the closing of the transaction an additional $15,000.00 will be forwarded which sum with the cash rent on said lease will be handled as the down payment on said property. Should it be

impossible to find a lessee who will lease on the above terms my $5,000.00 deposit will be returned to me upon demand or I will be permitted at my option to raise the full $20,000.00 balance on the down payment from other sources. This offer is to be in effect until September 1, 1958 but should a lessee not be found by that date I will have an additional 30 days to raise the balance."

Tucker accepted this offer and thereupon Sternes sent, and Tucker received, a check, dated July eighteenth, for $5,000.

By letter dated September 2, 1958, Tucker sent an earnest money receipt for Sternes' signature. He informed Sternes that he had a $500 rental deposit on a $5,000-a-year lease.

By letter dated September 4, 1958, Sternes returned the earnest money receipt with his signature. He had added to the terms of the receipt the following: "Agreement is conditional upon broker having a signed lease for 5 years at an annual rental of $5,000.00 effective on date of purchase." In his letter of transmittal he stated:

"* * * You appreciate that I am not in a position to purchase the property without such a lease in existence.

"At such time as you have in your hands an executed and effective lease for the leasing of said property for five years at a rental of $5,000.00 per year, effective upon my purchase of said property, you are authorized to deliver my acceptance of the offer to sell and to close the transaction."

Concerning the letter of transmittal and the condition added to the earnest money receipt, Sternes testified:

"Well, I had this letter prepared by my attorney in Marysville, knowing that I was getting the money

from my father, and there was no reason not to sign the earnest money receipt, so I signed the receipt and mailed it, along with this letter, back to Mr. Tucker, and I sent all the papers with the earnest money receipt back. That was September 4th. I took the earnest money receipt to my lawyer and he typed in the conditions of the lease in the earnest money receipt * * *."

When asked why he would not put up earnest money earlier, Sternes testified:

"A * * * I wanted to go home and talk to my father and make sure he was going to loan me the money.

"Q And that was your reason for not putting down the earnest money at that time?

"A That was one reason. The other reason, I wanted to think it over a little bit more. Talk it over with Jim on the road home to see what he thought of the place. To give us a little more time to talk it over. Discuss it.

"Q And your father, then, I take it, later did agree to do this financing?

"A Yes, he did.

"Q And after that you made the negotiations that wound up in the earnest money agreement that's on record here now?

"A That's correct.

"Q And at the time that that earnest money agreement was signed by you, your father then was agreeable to financing the down payment?

"A That's correct."

Plaintiff further testified:

"Q When you sent the earnest money receipt back to Mr. Tucker on or about September 4th, then you intended that that be a binding agreement for you to buy and the other people to sell, did you not?

"A Yes, at that time.

"Q You expected, then, the people to proceed with whatever was necessary to close that agreement?

"A Yes."

The jury was instructed that if it found that the earnest money agreement was conditioned upon the plaintiff's father loaning plaintiff $20,000, plaintiff was entitled to a verdict.

The defendants contend that the parol evidence rule prohibits the consideration of any evidence of the terms of the parties' agreement except those contained in the earnest money agreement itself. The plaintiff attempts to rebut this proposition by asserting that it can always be shown that a written agreement was subject to an oral condition.

Oregon's parol evidence rule is codified in ORS 41.740.[1]

■ We have repeatedly held, however, that the parol evidence rule does not prevent the consideration of evidence that the parties orally agreed that the obligation assumed by the writing was subject to a condition. *Degraw v. Grindrod,* 189 Or 684, 222 P2d 649 (1950), and cases cited therein. This appears to be the rule in most jurisdictions. 3 Corbin, Contracts (1960), 530, § 589.

---

[1] "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term 'agreement' includes deeds and wills as well as contracts between parties."

The above-stated exception to the parol evidence rule is also subject to limitation. That limitation is that evidence of a condition not stated in the writing will not be considered if it is determined that the parties intended the writing to contain their entire agreement, *i.e.*, the parties "made an integration of the agreement." *Dorsey v. Tisby,* 192 Or 163, 179, 234 P2d 557, 563 (1951). This limitation has an obvious common-sense basis; if the parties intend that all the terms of their agreement be as expressed in the writing, any other term would be contrary to the intention of the parties.

*Dorsey v. Tisby,* supra (192 Or at 179, 234 P2d at 563), states:

"* * * The first duty exacted by the rule of a judicial officer is to search through the evidence and ascertain whether or not the parties made an integration of the agreement. If he finds that they did not, the rule has no application and may be cast aside. But if they made an integration, all of their previous negotiations, whether written or oral, must be disregarded as evidence of the contract. The integration thereupon is deemed the sole evidence of their agreement, except, of course, for matter which it may have set forth in recital form, as, for example, the receipt of a given sum as consideration. The parol evidence rule protects the integration, but nothing else. It protects it by disregarding the preliminary negotiations as evidence of the agreement and by looking solely to the integration."

3 Corbin, Contracts, 368, § 573, states:

"All the cases may indeed be accepted as precedents for the proposition that if the parties have stated the terms of their contract in the form of a complete written integration, it cannot be varied or contradicted by proof of antecedent negotiations

and agreements. This is a mere statement of the obvious. * * *"

This court in *Dorsey v. Tisby,* supra, held that the writing was a complete integration of the agreement and, therefore, no other terms or conditions could be considered.

An earnest money receipt contemplates a subsequent conveyance or land sale contract with provisions or terms not contained in the earnest money receipt. In that sense it is not an integration of the entire agreement. However, it is not the type of instrument that contemplates any subsequent writing upon the subject of when and if the parties' obligations to buy and sell become effective.

■ All the evidence, particularly the testimony of the plaintiff himself, is that the earnest money receipt contained the complete agreement of the parties on the subject of the conditions to be fulfilled in order that the agreement be effective. Plaintiff's testimony is to the effect that the agreement did not contain a condition that it was subject to his obtaining financing from his father because when the plaintiff executed the agreement his father had promised him financing and the plaintiff would not sign the agreement until he was sure his father would finance him. At the time the receipt was signed the only condition that plaintiff wanted in the instrument was that a binding five-year lease, for $5,000 per year be obtained. Plaintiff was asked whether this condition concerning the five-year lease was the only condition at that time and the plaintiff answered as follows:

"A The only condition? This was one of the conditions that was down here, but Mr. Tucker also knew I was getting outside financing.

"Q But you had already ascertained from your father that you could get the financing at this time?

"A Yes, I could.

"Q So that condition had been complied with, then, had it not?

"A At that time. That's why I took this to my lawyer in Marysville, and he knew my father was going to loan me the money and he saw no reason for not signing."

There is no indication that the plaintiff intended to condition his obligation upon his father's fulfilling his promise to finance. The plaintiff's attorney knew the financing circumstances. The attorney too, according to plaintiff, saw no need to condition the agreement upon the father's fulfilling his promise to finance.

All the evidence was that the earnest money receipt was intended by the parties to contain the complete agreement and, therefore, the trial court was correct in granting judgment for the defendants.

■ This was the principal issue in the appeal and the remaining assignments of error require little discussion. Plaintiff contends the trial court erred in granting defendants' motion to strike the affirmative allegations in his reply. Defendants, in their answer, denied plaintiff's allegation that the earnest money agreement was conditioned upon plaintiff's father furnishing the financing and affirmatively alleged that defendants had performed everything they were to then perform; however, plaintiff refused to perform. Plaintiff affirmatively alleged in his reply, in effect, that the agreement was not binding because of Tucker's breach of his fiduciary duties to plaintiff. These allegations the trial court correctly struck.

The complaint was on the theory that there was a valid written agreement which was subject to an oral

condition which had not been fulfilled. The reply attempted to place plaintiff's right to the return of the money on a different basis. This is not proper in the reply. *Tracy and Baker v. City of Astoria,* 193 Or 118, 131, 237 P2d 954, 960 (1951).

■ Plaintiff also assigns as error the trial court's denial of his motion, made after all the evidence had been received, to amend his complaint to allege that no agreement had been consummated because the seller O'Bryant had never accepted plaintiff's offer. This is a different basis for relief than that previously alleged and the trial court ruled in accordance with ORS 16.390.

■ The trial court's failure to submit to the jury the issues of whether O'Bryant could convey marketable title and whether a sufficient lease was obtained is also asserted to be error. The evidence is that the transaction was not closed because Sternes' father changed his mind. Plaintiff never gave notice of any claimed defects in the title, as the agreement required. If he had, the evidence is that any possible defects could have been corrected within the time specified in the agreement. Plaintiff's contention that the lease was insufficient is without merit.

Affirmed.

ROSSMAN, J., dissenting.

The majority enter judgment for the defendants upon a purported issue which neither the trial judge nor the parties recognized as in the case. By adopting a view of the evidence which the parties did not take and which was not submitted to the jury the majority sustain the entry of judgment in the defendants' favor notwithstanding the return of a verdict in the plaintiff's favor. In that manner the plaintiff is deprived

of trial by jury of a purported issue which the majority deem the crux of this case.

The complaint alleges that the plaintiff deposited the sum of $5,000, mentioned by the majority, with the defendant Tucker "subject to, and conditioned upon plaintiff's father loaning plaintiff the money for the down payment of $20,000 to be made in addition to said deposit." There can be no doubt but what the oral condition precedent was attached to the down payment. The first time that the defendant Tucker saw the plaintiff he noticed that the plaintiff was a young man, and realizing that the purchase price of this ranch called for a large sum, inquired of the plaintiff whether he had arranged for needed financial assistance. At that point the plaintiff told Tucker fully that he was forced to look to his father for financing and that all of his commitments and agreements pertaining to the purchase of the ranch would have to be conditioned upon his father's willingness to lend him the needed money. Tucker, as a witness, reluctantly but nevertheless fully conceded that the conversation occurred and that he was the one who started it. It is clear from his testimony that he did not wish to devote time to the plaintiff, a very young man, unless needed finances were available to the plaintiff. That is why he made his inquiries of the plaintiff the first time that the plaintiff came to his office. It is also clear that the oral condition precedent was attached to the contemplated transaction, not as a temporary expedient but as a provision which would protect the plaintiff until his father could view the ranch.

The manner in which the plaintiff and Tucker viewed the coming of plaintiff's father from California to the ranch is highly significant. If the consummation of the transaction was not dependent upon (1) the

father's favorable reaction to the ranch and (2) his willingness to lend the plaintiff $20,000, the visit of the father would have been a social event only. The father was elderly and ill. The trip for him was arduous. His coming to the ranch was viewed as vitally important.

After the father had inspected the ranch and had announced (a) his dissatisfaction with it and (b) his unwillingness to finance his son in its purchase, the contemplated purchase at once came to an end. The plaintiff immediately gave Tucker the unwelcome news and demanded the return of the sum of $5,000. The foregoing clearly indicates that the oral condition precedent was still in effect.

It seems fair to infer that the trial judge did not believe that the oral condition precedent was of short duration only and that it was discarded a month or two before the plaintiff's father came to the ranch from California. The trial judge denied the defendants' motions for a judgment of involuntary nonsuit and for a directed verdict. He sustained the defendants' motion for the entry of judgment notwithstanding the verdict under a belief that the plaintiff had waived the oral condition precedent.

The instructions to the jury render it very clear that the sole issue submitted to them was this: was an oral condition precedent formed by the parties and did it render any agreement by the plaintiff to purchase contingent upon his father's willingness to finance him. No other issue concerning the substantive rights of the parties was submitted to the jury. The pertinent instruction reads:

"Here's the issue you have to worry about in this case. * * * I want to read it to you, and I want you to listen most carefully, because we are

now involved in determining what it is you have to be looking for.

"The plaintiff has alleged that he deposited said sum of $5000.00 with the defendants as earnest money on the purchase of said O'Bryant farm, subject to and conditioned, however, upon the plaintiff's father lending or loaning the plaintiff the money for the down payment of $20,000 to be made in addition to said deposit; that thereafter, plaintiff's father refused to loan plaintiff said money; that as a result of plaintiff's father's refusal to loan the plaintiff said money, the plaintiff was and is entitled to the return of said $5000.00

"Now, ladies and gentlemen of the jury, if you find that there was an agreement orally entered into between these parties providing that this contract—the earnest money agreement—would not go into effect or be binding on the parties unless the plaintiff was able to raise the $20,000 from his father, and if you further find that he was not able to get the $20,000 from his father then the plaintiff is entitled to the return of $5000.00 from the defendants. In other words, if your finding is that an oral agreement existed whereby this earnest money receipt—Exhibit '11'—was not to be binding under any circumstances unless the plaintiff was able to get the extra $20,000 as a down payment, then of course plaintiff is entitled to his money. But if you find that there wasn't any such oral agreement, and the burden lies on the plaintiff to prove that—if you find there wasn't any oral agreement at all, and 'agreement' means among the parties—between the parties—regarding the financing by the father, then of course he isn't entitled to get his money back. This Court holds as a matter of law that if the agreement—the earnest money receipt—was entered into, if it in fact was entered into, then under no circumstances would the plaintiff be entitled to the return of his $5000.00, and the defendants were right in the forfeiting of the money.

"Now, it is that simple. Was there in fact an

> oral agreement between the parties providing that this agreement—the earnest money receipt—wouldn't go into effect unless the plaintiff was able to get the additional $20,000 from his father? If you find that that agreement exists—if you find that it exists, and that it continued to exist even at the time when this earnest money receipt was signed, then plaintiff is entitled to $5,000.   *   *   *"

When the paragraph of the instructions last quoted, in referring to the oral condition precedent, said: "If you find that it exists, and that it continued to exist even at the time when this earnest money receipt was signed," it undoubtedly meant that if the plaintiff and Tucker, when they first met, agreed that the oral condition precedent should extend down to the day when the plaintiff's father reached a decision upon financing the purchase of the ranch, the plaintiff was entitled to the verdict. It will be noticed that the instructions said nothing about changing the agreement, modifying it, or waiving any part of it. I have quoted the entire instructions which stated the substantive law governing the rights of the parties. Further, the trial judge rejected an instruction requested by the defendants which read:

> "Further, if you find that there was such a condition, then you should consider whether or not the condition, if any, was waived by the plaintiff, and in that connection if you find that the plaintiff conducted himself in such a manner with reference to this transaction as to indicate that the condition had either been fulfilled or was no longer of importance to the plaintiff, such conduct, if any, would amount in law to a waiver of such condition."

The rejection of that requested instruction manifestly indicates that no issue of waiver was in the case. The treatment of the subject just mentioned indicates that

the instructions meant that if the parties formed an oral condition precedent which extended down to the day when the father visited the ranch, the plaintiff was entitled to recover, but that if such a condition precedent was not formed, the defendants were entitled to prevail.

The jury tried no issue concerning the modification, waiver, or termination of the oral condition precedent. The evidence clearly indicates that the oral condition precedent was formed during the first meeting of the plaintiff and Tucker. In short, the majority decide this case upon a purported issue that the pleadings do not form and which was never submitted to the jury.

Waiver was not plead. When an opportunity to plead waiver is available, it must be plead: *Miller Construction Co. v. Watts Construction Co.*, 223 Or 504, 355 P2d 215; *Williams v. Mt. Hood Ry and Power Co.*, 57 Or 251, 110 P 490, 111 P 17; Anno Cas. 1913A 177; 56 Am Jur, Waiver, § 18, page 118; and Clark on Code Pleading, 2d ed. 284. In this case the defendants had ample opportunity to plead waiver if they had any thought that the plaintiff had waived the oral condition precedent. The plaintiff has never had any trial whatever upon the matter of waiver. The answer does not plead waiver, and no issue of that kind was submitted to the jury.

Possibly the majority do not make their decision turn upon waiver, but appear to believe that after the plaintiff and Tucker had created the alleged oral condition precedent they abandoned it when some papers were signed. No one testified to that effect, and as we have seen, the parties intended that all of the plaintiff's commitments to purchase should be conditioned upon his father's willingness to advance the first pay-

ment. The paper which the plaintiff signed is perfectly in harmony wtih the oral condition precedent which the plaintiff and Tucker agreed upon. An oral condition precedent of this kind does not contradict the writing to which it is attached. It merely indicates that the writing never became effective or that it does not represent an entire integration.

A motion for the entry of judgment notwithstanding the verdict cannot be sustained if substantial evidence supports the verdict. See Oregon Constitution, Article VII (amended) § 3. No one asserts that the verdict lacks support by substantial evidence.

It is seen from the foregoing that the majority decide this case upon an issue that was not plead and by taking a view of the evidence that even the parties had not adopted.

The challenged judgment should be vacated and one should be entered for the plaintiff based upon the verdict.

I dissent.

Chief Justice McALLISTER and Justice SLOAN join in this dissent.