JAMES GUTHRIE, Appellant, *v.* DAVID P. THOMPSON, Appellee.

*Appeal from Multnomah.*

1. Under a contract in writing to convey land, on payment of the price, the vendor, in order to maintain an action for the purchase money, must first execute and tender a conveyance to the purchaser; and the purchaser must tender the price, and demand a deed, before he can maintain an action for a breach of the contract.
2. A contract, in writing, to convey land, can be abandoned by parol.

In this case, a decree, *pro forma*, was entered for the defendant, before Chief-Justice Wait, at the Multnomah Circuit, and the case is brought here by appeal. The bill states—

*First.* That Guthrie, being the owner of what is known as the Abernethy Island and Mills, at the Willamette Falls, in Oregon City, on the 15th day of October, 1858, executed to Thompson his promissory note for the sum of five thousand seven hundred and fifty dollars, payable two years from date, or sooner, if Guthrie could do so, to draw interest at fifteen per cent., if not paid in one year from date; which note was secured by a mortgage on said island and mills.

*Second.* That on the 20th day of December, 1858, the parties entered into the following agreement, *i. e. :*

"*December 20th,* 1858.

" It is agreed between James Guthrie, Jr., of the first part, and David P. Thompson, of the second part, as follows, to wit : That James Guthrie, Jr., is to sell and relinquish to David P. Thompson, before mentioned, the one undivided fourth of the Island Mills property, known as the Abernethy Island, lying and being situate at the falls of the Willamette River, near Oregon City, Oregon Territory ; and the said Guthrie is to warrant and defend the above-mentioned prop-

erty against any person or persons holding, owning or claiming, under, through or by him. That the said Thompson is to release a certain mortgage, executed by Guthrie, on the seven-sixteenths of the Island Mill and island, for $5,750, on or about the 15th of October, 1858, and becoming due one year from date, and to pay, on the 1st of January, 1859, the additional money, if so valued.

" We agree to abide the valuation of said property, before mentioned, as made and determined by James K. Kelly and Ralph Wilcox.

" JAMES GUTHRIE, Jr.,<br>" D. P. THOMPSON.

" Attest,—JAMES K. KELLY."

*Third.* That, in pursuance of said agreement, Wilcox and Kelly, on the same day of the date of said agreement, valued said property at the sum of twenty-five thousand dollars.

*Fourth.* That soon afterwards Guthrie executed and tendered to Thompson a deed, in proper form, to said property, as required by said agreement; which deed Thompson declined to receive, and refused to complete said agreement.

*Fifth.* That Thompson has commenced suit on said note and mortgage against Guthrie, and this proceeding is instituted to enjoin such suit, and a specific performance of said contract be decreed. The answer denies the valuation, as stated, the tender of the deed, and refusal of defendant to accept the same; and states, as a further defence, that said agreement was abandoned by the mutual consent of the parties; which allegation of abandonment, so set up in the answer, is denied by the plaintiff in his replication.

The issues of fact submitted to the court are—

*First.* Was there a valuation?

*Second.* Did Guthrie tender a deed, as he has alleged?

*Third.* Was the contract abandoned by the mutual consent of the parties?

*Johnson & Williams*, for appellant.

*Kelly & Huelat*, for appellee.

BOISE, J.    There is, perhaps, sufficient evidence to establish the valuation by Wilcox and Kelly.

The only evidence of the execution and tender of a deed is, that Guthrie had a deed made out to the property described in the contract; but the witness does not know whether the deed was properly witnessed, or in proper form; and there is no evidence tending to show that any deed was ever tendered to Thompson; and, consequently, there is an utter failure to prove the tender.    And the counsel for Guthrie admit that the proof of tender is very scant, and maintain that no tender was necessary; that it was the duty of Thompson to make and tender a deed to Guthrie for execution; and various authorities are cited in support of that proposition, which I shall consider hereafter.

This is a case of dependent covenants.    The cancelling or giving up of the note and mortgage, and paying the balance of the purchase money, found on the valuation, and the making the deed, were to be concurrent acts.    I think the understanding of the parties to such contracts is, that the vendor shall, at his own expense, prepare and tender the deed, and the vendee will not be in default until he does so.

And, generally, where either party to such a contract seeks to enforce it by suit, he must first put the other party in default—the vendor, by making and tendering the deed, and the vendee, by tendering the price and demanding a deed—which deed, in contracts like the one sued on, the vendor should have a reasonable time to prepare after demand.    Such I understand to be the rule in New-York.

In *Connelly* v. *Pierce*, 7 *Wendell, p.* 129, the court say, " the party, who is to give a deed, certainly should prepare and have it drawn at his own expense."    It is true, a different rule prevails in England, as declared in the case of *Baxter* v. *Lewis, Forrest's Ex. R.* 61–2, referred to in *Sugden on Vendors, Am. ed.* 1820, *pages* 181–2 ; but the courts of New-York have refused to adopt the English rule, for the good reason that such is not the practice of the country, or the understanding of parties to such instruments.

Guthrie *v.* Thompson.

In England, the practice of conveyancers was for the solicitor of the purchaser to prepare the deed, which practice is mentioned and discussed in a note to the case of *Fuller* v. *Hubbard,* 6 *Cowen, p.* 18. In this country the practice is different from the English practice. Here the vendor prepares the deed, and, where such is the practice and the understanding of the parties, such should be the rule.

From the current of authorities in New-York, I understand that, in that State, in order to maintain an action for the purchase money, under a contract to convey land when the purchase money is paid, the vendor must make and tender a deed; and the rule in England is the same, except that there the deed should be made by the purchaser. For there it is necessary, before the vendor can sue for the purchase money, to execute the conveyance, or offer to do so. The rule is thus laid down in *Sugden on Vendors, page* 162: "Thus, a vendor cannot bring an action for the purchase money without having executed the conveyance, or offered to do so, unless the purchaser has discharged him from so doing; and, on the other hand, a purchaser cannot maintain an action for breach of contract, without having tendered a conveyance and the purchase money."

The only difference between the rule here and in England is as to who shall prepare the conveyance; and such difference arises from the variance in the practice of conveyancers here and in that country.

The other point made is, that the contract was abandoned by the parties. This being a defence set up in the answer, and issue being taken thereon, the burden of proof is on the defendant, Thompson. The lapse of time, insisted on by defendant as evidence of abandonment, would not be sufficient, if the parties had treated the contract as still continuing; and the question of abandonment is really one of fact, as to the intent and understanding of the parties.

There is evidence on both sides on this point; and, on an examination of the depositions, the court is of opinion that Guthrie considered this contract abandoned, and so treated the property as his own.

The testimony of Messrs. Charman and Warner is the most definite, especially that of Charman, who testifies, that some time after the date of the contract Guthrie offered to sell to Charman and Warner one-half of this property, and told him (Charman) that he was the entire owner of the property, and that Thompson had a mortgage on the property of the amount named in the contract.

There could not well be more direct testimony of the abandonment of the contract by Guthrie, unless it were a written abandonment, and I think an abandonment by parol would be binding on the parties.

The decree of the court below will be affirmed.