Argued March 11, affirmed April 13, rehearing denied May 18, 1920.

## HURST v. HILL.

### (188 Pac. 973.)

**Principal and Agent—That Defendant Seller's Son Acted for Himself in Buying Potatoes Sold to Plaintiff Admissible.**

1. In action for failure to deliver potatoes sold by defendant's minor son, in charge of his store, defendant claiming son had no authority, evidence of son that when he bought potatoes he secured them for himself with his own money *held* admissible to rebut any inference from son's having been in charge of defendant's store that potatoes were defendant's.

**Trial—Instruction as to Signing of Contract Held not Erroneous in View of Rest of Instruction.**

2. In action for failure to deliver potatoes sold by defendant's minor son, an instruction that it was for the jury to determine whether contract was signed by both parties at the time it was entered into is not erroneous in that it required both parties to sign at the same time in view of other part of instruction, "and this becomes one of the material questions for you to determine in the course of settlement of the issues herein presented."

**Principal and Agent—Authority not Provable by Declarations.**

3. The authority of an agent cannot be proved by his own declarations out of court.

Sales—Buyer Who Demands Delivery Within Reasonable Time can Enforce Contract.

4. Where no time for delivery was fixed by contract of sale, if buyer demanded delivery within reasonable time, and was then ready, able, and willing to perform, there being no delivery offered by seller at any other time, buyer would be in position to enforce the contract.

Appeal and Error—Exceptions to Instructions Partly Favorable Should be Pointed to Part Complained of.

5. Where a party is excepting to a long series of paragraphs of instructions, part of which are favorable to him, and other parts vague and ambiguous, he should point out to court particular fault complained of, or at least point his exceptions to part particularly claimed to be erroneous.

Appeal and Error—Subjunctive Instructions Based on Hypothetical Condition Held Harmless.

6. In action for failure to deliver potatoes sold, instructions subjunctive in character and based on hypothetical condition that a reasonable time for performance of the contract had expired when assigned by the buyer to plaintiff *held* harmless.

Sales—Demand Necessary to Fix Liability Where Time for Performance not Fixed.

7. Where contract of sale fixes no time for delivery, there can be no default which either buyer or seller can take advantage of until one party or other has made demand for delivery or acceptance.

Sales—Contract not Fixing Time for Delivery Lapses After Reasonable Time Without Demand.

8. If either party to a contract of sale not specifying time for delivery lets a reasonable time expire without demand, the contract lapses, and neither party can enforce performance.

Appeal and Error—Complaint cannot be Made of Too Favorable Instruction.

9. Appellant cannot complain on account of an instruction more favorable than he had a right to ask.

Evidence—Perishable Character of Potatoes Matter of Common Knowledge.

10. It is a matter of common knowledge that potatoes are a perishable product, not lasting over one season.

Sales—Five Months' Delay in Demanding Delivery of Potatoes Unreasonable.

11. Five months' delay on the part of the buyer of potatoes and his assignee in demanding delivery should be considered unreasonable as matter of law.

From Marion: PERCY R. KELLY, Judge.

Department 2.

This is an action to recover damages for the alleged breach of a contract to deliver a 15-ton carload of Burbank potatoes, of a specified size, at Jefferson, Oregon.

Several questions were presented in the case; the principal one being whether or not defendant's name was placed to the contract by his authority.

This contract purported to be signed by defendant by E. B. Hill, his son. At the time the contract was made the defendant had a store at Jefferson, Oregon. He was not, at the time, however, living at Jefferson, but at Portland, Oregon, and the store was in charge of his son as his agent. E. B. Hill, the son, was a minor still under age, but was managing the store. There was evidence that he had purchased flour and other supplies for the store, which was engaged in a retail business; but there was no evidence that he had ever purchased or sold stuff in carload lots, similar to the transaction in question.

The contract, as offered in evidence by the plaintiff, was as follows:

"Jefferson, 10–13–1916.

"I confirm sale to F. H. Coffin, one 15 ton car Burbank potatoes, #1, shipping, free from disease in good sacks, all over three inches to ten inches in length—not over ten per cent three inch stuff at $1.25 per hundred pounds, f.o.b. Jefferson, paid for as soon as loaded.

"J. B. HILL,
"By E. B. HILL.

"I confirm acceptance.

"F. H. COFFIN.

"I hereby assign to W. S. Hurst this contract, Nov. 24, 16.

"F. H. COFFIN."

A carbon copy of the contract was given to E. B. Hill at the time the same was signed, which was identical with the above, except that it did not have the signature of F. H. Coffin and did not have the assignment. The contract was signed on October 13th. There is no evidence of any demand by Coffin prior to the assignment to Hurst, which, the evidence of plaintiff tended to show, occurred on the twenty-third or twenty-fourth day of November.

After this there were some negotiations between Hurst and E. B. Hill (which may or may not have reached J. B. Hill, the defendant) in relation to the potatoes. There seems to have been some trouble about obtaining a car in which to ship them. At the time of the making of the contract the minimum load which would be accepted by the railroad seems to have been 15 tons, but about this time the railroad changed its rules so that the minimum car was made 18 tons, and they would not accept any smaller car. About the time of the assignment to Hurst, and immediately after, he attempted to make an arrangement with another Jefferson firm, who were shipping potatoes, to put in some of their potatoes, in the car with those covered by this purchase, so as to make up the 18 tons, but he seems to have been unable to make the arrangement. E. B. Hill (either for himself or for his father) about the same time tried to induce the plaintiff to buy three tons of other potatoes to make up the balance of the carload, but he seems to have reached no agreement with the plaintiff as to this. During these negotiations there was no definite demand by the plaintiff for the delivery of the potatoes, and plaintiff does not claim that any demand was made at that time.

So far as the evidence goes, the matter was then permitted to drop by all the parties, and was not brought up again until in March, 1917, when the plaintiff made a written demand upon the defendant for the potatoes, which was refused by the latter. In the meantime, potatoes had gone up from about $1.25 per hundred at the time of making the contract, to in the neighborhood of $3.50 per hundred in March.

The defendant claims that his son had no authority to sign the contract for him, or to buy or sell potatoes for him, except in a small way, by a single sack for retail purposes, and that he had no knowledge that his son had made the deal in his name, or had signed his name to the contract, until the demand was made upon him in March.

The cause was submitted to a jury who found a verdict in favor of the defendant. Upon this verdict a judgment was entered, from which the plaintiff appeals.

There were exceptions by the plaintiff, based upon the introduction of evidence and the instructions to the jury, which will be considered at length in the opinion.                                              Affirmed.

For appellant there was a brief with oral arguments by *Mr. Herbert A. Cooke* and *Mr. Walter C. Winslow.*

For respondent there was a brief and an oral argument by *Mr. Elmo S. White.*

BENNETT, J.—E. B. Hill, a witness for the defendant, was permitted by the court to testify, among other things, that he bought the 15 tons of potatoes with his own money, and as to where he

got the money, and that his father knew nothing about the contract to which his name was signed, and he identified three checks, given by him apparently in the purchase of the potatoes, and which were signed by his own name individually. The admission of this evidence, as to where and how he purchased the potatoes, is one of the errors alleged by the plaintiff.

1. We think the evidence under the circumstances was admissible. Plaintiff had offered evidence tending to show that E. B. Hill was in charge of his father's store, and that while so in charge he had purchased potatoes upon this order. From this evidence, if unexplained, the jury might infer that the defendant must have known of the transaction and probably assented thereto and was bound thereby. But, if the son bought the potatoes individually and upon his own deal, and paid for them with his own money, and not out of his father's money, or the store money, it tends to rebut any such inference or presumption, and for that purpose the evidence was competent.

The court, among other instructions, gave the jury the following:

"Plaintiff's own testimony—that is, the testimony of the plaintiff's witnesses—is to the effect that the signature was made by E. B. Hill. The contract, being of the character that it is, would require the assent of both parties thereto, expressed in writing and signed by both of the parties.

"You have heard the evidence in the case, and it is for you to determine whether or not the contract in question was signed by both parties at the time it is alleged it was entered into by Mr. J. B. Hill through his agent, Mr. E. B. Hill and Mr. Coffin, and this becomes one of the material questions for

you to determine in the course of settlement of the issues herein presented.''

It is claimed by the plaintiff that the court thereby told the jury that plaintiff could not recover unless the contract was signed by Coffin *at the very time* it was signed by E. B. Hill.

It is not necessary to pass upon the question of whether or not the contract had to be signed by Coffin at the very time that E. B. Hill attached his father's name, or at the time when the carbon copy (which does not appear to have been signed by Coffin at all) was given to young Hill, in order to make a valid contract. Whether or not the court would have been justified in giving such an instruction, it did not in fact so tell the jury. What the court did say to the jury was ''that this becomes *one* of the *material questions* for you to determine in the course of settlement of the issues herein presented.''

There was a direct conflict in the testimony as to whether or not the contract was signed by Coffin at that time. There is no question but what it was material in the case, whether it was signed at that time or not, even if a signature by Coffin at that time was not absolutely and necessarily essential to a valid contract; therefore the instruction given by the court was not error in any view of the law.

3. The court also instructed the jury as follows:

''In this case any statement or declaration of authority made by the defendant's son at the time of the original transaction, is not evidence of agency which is binding upon the defendant.''

And the giving of this instruction is still another ground of error asserted by the plaintiff.

The instruction, however, was the simple declaration of the elementary rule that you cannot prove

the authority of the agent by his own declarations out of court.

This doctrine is so well settled, and so elementary, and has been so often announced by this court, that there is little room for question as to the correctness of the instruction: *Bridenstine* v. *Gerlinger Motor Car Co.*, 86 Or. 411, 423 (168 Pac. 73, 922), and authorities cited.

The most serious question in the case, as we view it, is in relation to the giving by the court of the following series of instructions:

"If you should find from the evidence that during such period of time following the execution of this contract as you find reasonable for performance of it, the purchaser was not ready, able and willing to receive the potatoes and pay the contract price, the plaintiff could not recover in this action, irrespective of any default upon the part of the defendant. And by referring to the purchaser in this connection, gentlemen of the jury, I desire to be understood as referring to the holder of the contract, if there was an assignment of the contract by Mr. Coffin to Mr. Hurst. Reference to purchaser includes reference to Hurst. As assignee he would then be deemed the purchaser within the assignment provision. F. H. Coffin, mentioned in the complaint should be deemed the purchaser at all times until the alleged assignment to the plaintiff.

"If a reasonable time for performance had expired prior to the time of this alleged assignment, and if during that time the said F. H. Coffin was not financially able to pay for the potatoes had delivery been tendered, or was unwilling or not ready to accept the potatoes during that period of time, he was in default, and neither he nor the plaintiff could maintain this action for the breach thereof.

"Unless, therefore, you find that the said F. H. Coffin was, during the period of performance and up to the time of the alleged assignment, ready, able

and willing to accept delivery of said potatoes and pay for the same, you should find for the defendant.''

4. To these instructions there was a blanket exception. They are ambiguous and by no means definite, and it is claimed by the plaintiff that they informed the jury, in effect, that Coffin must have been ''ready, able and willing'' *all the time* from the making of the contract up to the assignment, in order to justify a recovery. There are some portions, especially the last clause of the last paragraph, which seem to justify this construction. In that regard, that clause of the instruction was inaccurate; for under such a contract, where no time for delivery was fixed, if the buyer made a demand for the delivery within a reasonable time, and was ready, able and willing to perform at that time, there being no delivery offered by the seller at any other time, he would be in a position, we think, to enforce the contract.

There is a question, however, as to whether a party can put himself in a position to question a series of instructions, or a long instruction like this, a part of which is incorrect and other portions ambiguous, by a blanket exception to the whole charge or series of charges: *Murray* v. *Murray,* 6 Or. 17, 23; *Kearney* v. *Snodgrass,* 12 Or. 311, 317 (7 Pac. 309); *Conklin* v. *La Dow,* 33 Or. 354 (54 Pac. 218).

Part of this instruction was unquestionably favorable to the defendant, notably that portion reading as follows:

''I desire to be understood as referring to the holder of the contract, if there was an assignment of the contract by Mr. Coffin to Mr. Hurst. Reference to purchaser includes reference to Hurst. As assignee he would then be deemed the purchaser within the assignment provision. F. H. Coffin men-

tioned in the complaint should be deemed the purchaser at all times until the alleged assignment to the plaintiff."

5. It would seem, as a matter of fairness to the court, where a party is excepting to a long series of paragraphs like this, part of which were favorable to him, and other portions vague and ambiguous, that the party so excepting should point out to the court the fault complained of, or at least should point his exceptions to the particular portion of the charge claimed to be definitely erroneous, so that the court may correct it if he sees fit.

6. However, assuming that the exception was sufficient to present the question, we are of the opinion that however erroneous the instruction may have been, it could not have injured the plaintiff. It was subjunctive in its character, and based upon the hypothetical condition, *that a reasonable time for the performance of the contract had expired,* at the time the assignment of the contract was made to Hurst, and the question of whether or not such a reasonable time had expired was submitted to the jury.

7. This being a contract in which no time for delivery was fixed by the terms of the instrument itself, it is conceded by the briefs of both the appellant and the respondent that there could be no default which either the buyer or the seller could take advantage of, until one party or the other had made a demand for delivery or acceptance. And this is unquestionably the law.

"If no time is fixed for delivery the buyer must make a demand": 35 Cyc. 165.

"Neither party could put the other in default, without performance or an offer to perform upon his part": *Longfellow* v. *Huffman,* 49 Or. 486 (90 Pac. 907).

"If both parties are present and neither of them tenders performance, then both are in default and neither of them can sue the other for the breach": *Catlin* v. *Jones,* 52 Or. 337 (97 Pac. 546).

8. And we think it equally clear, that if either party lets a reasonable time expire, without a demand, then the contract lapses, and neither party can enforce a performance: *Hume* v. *Mullins,* 18 Ky. Law Rep. 108 (35 S. W. 551).

There was no evidence whatever of any demand by Coffin prior to the assignment to Hurst, and indeed there was no evidence of a demand by anyone until March, 1917.

Under this state of facts, if a reasonable time for the performance of the contract had expired, at the time of the assignment by Coffin to Hurst, the contract had lapsed and the plaintiff would have had no right to recover, and the court might safely have instructed the jury that, if a reasonable time for the performance of the contract, and for a demand for performance, had lapsed at the time of such transfer (there being no evidence of a demand prior to that time), then the plaintiff could not recover.

9. The court, however, did not go so far as that, but assumed that the plaintiff could recover, notwithstanding the fact that he had made no demand, even if a reasonable time for the performance of the contract had expired prior to the transfer by Coffin, if he had been ready and willing to perform during that time. The instruction given therefore, while not accurate as an abstract proposition of law, was more favorable to the plaintiff, under the undisputed facts of the case, than he had a right to ask.

We are of the opinion, therefore, that there was no reversible error at the trial and that the judgment should be affirmed.

We are more satisfied with this conclusion because of the long delay on the part of Coffin and Hurst in demanding the performance of the contract. The contract, as we have seen, was dated October 13, 1916, and there is no contention on the part of the plaintiff that any demand was made until in March, 1917, or about five months after the date of the contract, and after the market price of potatoes had gone up from $1.25 to $3.50 per hundred, or almost 200 per cent.

10. It is a well-known fact that potatoes are a perishable product. They do not last over one season, and if they are stored for any considerable time, they must be sorted and resorted and deteriorate rapidly both in weight and quality. They are also subject to great and sudden fluctuation in values.

If potatoes had gone down to 50 cents a hundred between October and March, instead of going up to $3.50, it would not seem reasonable that the defendant, without offering to deliver from October until March, should then have made up a car and demanded that the plaintiff take them and pay $1.25 a hundred. Neither does it seem reasonable that the plaintiff should lie by for three or four or five months, without making any demand for performance, and then come in and ask that the defendant should be compelled to deliver, when potatoes had gone up to three times their value at the time of the making of the contract.

In *Hume* v. *Mullins,* 18 Ky. Law Rep. 108 (35 S. W. 551), the Supreme Court of Kentucky held that a contract for the sale of whisky in bond, which was in terms very much like this one, had lapsed as a matter of law, where the buyer made no demand

for a year and the price of whisky had advanced in the meantime, and that the demand was not made in a reasonable time. Whisky in bond is not a perishable product, but will continue in good condition for many years.

11. If, in the matter of a product like that, which is not perishable, a year is, as a matter of law, an unreasonable time for the buyer to delay making a demand, it would seem that five months, where the property was a perishable commodity like potatoes, and subject to so much fluctuation in value, ought to be considered unreasonable.

The court below submitted the question to the jury as a question of fact, and we think on the whole the rulings of the court were quite as favorable to the plaintiff as he could ask.

AFFIRMED. REHEARING DENIED.

McBRIDE, C. J., and BEAN and JOHNS, JJ., concur.