Argued July 9, affirmed August 2, petition for rehearing
denied October 2, 1973

HUSZAR, *Appellant, v.* CERTIFIED REALTY
COMPANY ET AL, *Respondents.*

512 P2d 982

*Donald C. Walker,* Portland, argued the cause and filed a brief for appellant.

*J. Robert Jordan,* Portland, argued the cause for respondent Certified Realty Company. On the brief with him were Francis F. Yunker and Darrell E. Bewley, Portland. Also on the brief was Gordon H. Price, Molalla, for respondents Krupicka.

TONGUE, J.

This is an action by a purchaser of real property for return of a down payment which had been declared to have been forfeited for failure of the purchaser to complete the transaction. Plaintiff appeals from an adverse judgment, following the granting of a motion by the realtor for an involuntary nonsuit and a motion by the seller for a directed verdict. The trial

Bryson, J., did not participate in this decision.

court also denied plaintiff's motion for a directed verdict. We affirm.

*Summary of the facts.*

The facts are not complicated. Defendants Krupicka listed their farm near Molalla for sale by defendant Certified Realty Company (herein "Certified"). Plaintiff, in response to a newspaper advertisement, paid $1,000 to Certified and signed a standard form earnest money receipt, as prepared by Certified. Upon acceptance by defendants Krupicka of the earnest money agreement plaintiff paid an additional $4,000, as required by that agreement.

The earnest money agreement provided for the purchase of the farm by plaintiff for $70,000, with the $5,000 as earnest money, an additional $5,000 payable "[u]pon acceptance of title and delivery of contract," and the balance of $60,000 payable in installments under a land sales contract naming plaintiff, his wife and his son as the purchasers.

The agreement also provided that:

"A title insurance policy from a reliable company insuring marketable title in seller is to be furnished purchaser in due course at seller's expense; preliminary to closing seller may furnish a title insurance company's title report showing its willingness to issue title insurance, which shall be conclusive evidence as to seller's record title.

"It is agreed that if seller does not approve this sale within the period allowed broker below in which to secure seller's acceptance, or if the title to the said premises is not insurable or marketable, or cannot be made so within thirty days after notice containing a written statement of defects is delivered to seller, the said earnest money shall be refunded. But if said sale is approved by seller and

title to the said premises is insurable or marketable and purchaser neglects or refuses to comply with any of said conditions within ten days after the said evidence of title is furnished and to make payments promptly, as hereinabove set forth, then the earnest money herein receipted for (including said additional earnest money) shall be forfeited to seller as liquidated damages and this contract thereupon shall be of no further binding effect."

Finally, the "seller's closing instructions," as also set forth in that same document, provided in part as follows:

"I agree to pay forthwith to the above named broker a commission amounting to $4,200 for services rendered in this transaction. In the event of a forfeiture of the deposit as above provided, the said deposit shall be paid to or retained by the broker to the extent of the agreed upon commission with residue to the seller. * * *"

Plaintiff had previous experience in purchasing real property and intended to subdivide and sell the property.

On July 14, 1971, a preliminary title report was issued by a title insurance company, showing that all taxes may not have been paid and that there was a mortgage on the property to secure payment of $5,200. Plaintiff admitted that he "probably" received that report "around the middle of July" and that at about the same time he applied to the bank for a loan to raise the additional $5,000 needed to complete the transaction. At that time, however, he was unable to borrow that money, either from the bank or from "different loan companies." He then reported this to Certified and "asked them to attempt to give [him] as much time as possible to raise it."

In early September plaintiff was "probably" (as he testified) told by a representative of Certified that the Krupickas "wouldn't wait any longer to complete the sale." By letter dated September 9, 1971, plaintiff was notified in writing that "this office has been prepared to close this transaction as we indicated to you some time ago" and that unless plaintiff paid the sum of $4,835.50 on or before September 19, 1971, the earnest money deposit of $5,000 "will be declared a forfeiture." The letter also quoted from the forfeiture provision of the earnest money receipt and enclosed a statement showing computation of the $4,835.50, as well as a copy of the title report.

Upon receipt of that letter plaintiff went to an attorney for advice. He did not, however, raise or tender to Certified the $4,835.50 prior to September 19, 1971. Neither did he demand delivery of a contract for sale of the property, signed by the Krupickas, or give notice of any claimed defects in the title to the property. He testified, however, that Certified did not "ever present [him] with a contract prior to that time with the Krupickas' signature on it" and that "they" never did so.

Plaintiff also offered evidence, over defendants' objections, that subsequently, through another attorney, plaintiff attempted to negotiate a contract for purchase of the property in plaintiff's sole name—without participation by his wife and son—but were unable to agree on "lot release" provisions. In the course of such negotiations, and on October 6, 1971, plaintiff paid the sum of $4,835.50 to Certified as a "tender," subject to approval of the seller. Plaintiff testified that "[a]t that time Certified Realty Company told [him] that that transaction had been termi-

nated and they would accept this only as a tender if the Krupickas would receive it."

After some further negotiations defendants Krupicka, through their attorney, notified plaintiff's attorney by letter dated November 22, 1971, that the contract as proposed by plaintiff "did not conform to the earnest money agreement and was not acceptable to Mr. Krupicka"; that the earnest money agreement had "expired" and that "Mr. Krupicka has no interest in Mr. Huszar's deposit with Certified Realty, according to the terms of the earnest money agreement."① Plaintiff's attorney responded with a letter stating that plaintiff "has been and is ready, willing and able to execute a contract that conforms with the earnest money agreement." Plaintiff also demanded return of the payments previously made by him.

In response, Certified, through its attorney, wrote a letter reviewing the transaction, rejecting plaintiff's tender, and stating that "the forfeiture of September 20, 1971, remains in full force and effect * * *." A subsequent tender by plaintiff to Certified was then returned.

After a further demand by plaintiff this action was filed, as well as a separate action by plaintiff against defendants Krupicka for $17,500, which related to "the same transaction" and apparently was still pending at the time of the trial of this case.

1. *Having failed to prove performance of the earnest money agreement on his part, plaintiff is not entitled to the return of his earnest money payment.*

Plaintiff's primary contentions, as repeated in

---

① That letter also stated, mistakenly, that plaintiff had failed to pay the additional $4,000 earnest money payment required by that agreement.

most of his assignments of error, are that upon payment by him of $5,000 as a down payment, "the next conditions prior to closing were upon the sellers, namely, to furnish clear title and delivery of a contract"; that defendants did not furnish clear title and admitted that they never prepared or signed a contract and that, accordingly, plaintiff is entitled to the return of the down payment.

Defendants contend, on the contrary, that they did furnish a clear title, as shown by a title report; that plaintiff made no contention prior to the trial of this case that plaintiff's title was defective, but that plaintiff was unable to raise the additional $5,000 required to close the transaction, which failed solely for that reason and not because of any failure by either defendant to perform any required condition. Accordingly, defendants contend that plaintiff cannot recover because he failed to plead and prove the performance required of him by the contract.

■ Ordinarily, of course, a party to a contract who complains that the other party has breached the terms of a contract must prove performance of the contract on his own part, or a valid tender of performance rejected by the other party. *Anderson v. Wallowa National Bank*, 100 Or 679, 689, 198 P 560 (1921).

■ The earnest money agreement in this case provided that the additional sum of $5,000 was payable by plaintiff "[u]pon acceptance of title and delivery of contract." These conditions, as imposed upon the buyer and the seller, were "concurrent conditions." 1 Restatement 363, Contracts § 251; 3A Corbin on Contracts 19, 144, §§ 629, 656 (1960); *Winslow v. Gilstrap*, 147 Or 374, 379, 32 P2d 767 (1934); and *Guthrie v. Thompson*, 1 Or 353, 355 (1861). See also 1 Restatement 388, Contracts § 267, illustration 4.

■ It does not follow, however, as plaintiff contends, that even though plaintiff was unable to raise the $5,000, he could nevertheless demand return of the $5,000 previously paid by him as earnest money because of defendants' failure to deliver to him a title insurance policy showing good and marketable title, as well as a proposed contract signed by defendants Krupicka.

Since the early decision of this court in *Guthrie v. Thompson, supra,* the established law in such cases has been as stated in that case (1 Or at 355) as follows:

"And, generally, where either party to such a contract seeks to enforce it by suit, he must first put the other party in default—the vendor, by making and tendering the deed, and the vendee, by tendering the price and demanding a deed— which deed, in contracts like the one sued on, the vendor should have a reasonable time to prepare after demand. * * *"

To the same effect, see *Coles v. Meskimen,* 48 Or 54, 57, 85 P 67 (1906); *Hurst v. Hill,* 96 Or 311, 320, 188 P 973 (1920); *Winslow v. Gilstrap, supra* at 379. See also 3A Corbin on Contracts, *supra* at 20, 144, §§ 629, 656, and 1 Restatement 363, Contracts § 251. This is particularly true when, as in this case, it is obvious that the other party is unable to perform, in which event the first party is not required to proceed with actual performance in order to place the other party in default. See *Anderson v. Wallowa National Bank, supra* at 690. See also 1 Restatement 413, Contracts § 280.

In this case plaintiff had informed defendants that he was having difficulty raising the $5,000 required to close the transaction. After waiting several

weeks for plaintiff to do so defendant Certified notified plaintiff that it "has been prepared to close this transaction as we indicated to you some time ago," tendered a title report and allowed plaintiff 10 additional days in which to make the payment due "[u]pon acceptance of title and delivery of contract."

Plaintiff made no contention at that time that the title was not marketable or could not be made so within 30 days, as provided by the terms of the earnest money contract and made no demand for delivery of a contract. Neither did plaintiff tender payment of the $5,000 within 10 days after being furnished with the title report, as also provided by the terms of that agreement. Under these facts plaintiff is not entitled to complain that defendants failed to furnish clear title or to deliver a contract. It also follows that the trial court was correct in holding that plaintiff failed to offer evidence sufficient to make a prima facie case to go to the jury.

■ Plaintiff contends that there was "no evidence that the sellers were in position to perform * * *." Assuming that plaintiff is entitled to raise that issue and to contend that defendants made no valid offer or tender of performance, we hold that the letter of September 9, 1971, attaching the title report, provided prima facie evidence to the contrary. Again, plaintiff gave no notice of any claimed defects in the title, as required by the earnest money agreement. The existence of a $5,200 mortgage and the possibility of some unpaid taxes may well have been considered as defects to be cleared by payment from funds available on closing the transaction. Cf. *Sternes v. Tucker,* 239 Or 105, 114, 395 P2d 881 (1964).

Plaintiff also contends that, in any event, the

$5,000 earnest money payment subject to forfeiture belongs exclusively to defendants Krupicka as the sellers; that their attorney expressly disclaimed any "interest" on their part in that payment and that, as a result, it must be returned to plaintiff even though Certified, as a result, may have a claim for a commission against the Krupickas.

■ The earnest money agreement provided for payment of a commission of $4,200 to defendant Certified and expressly provided that the earnest money payment "shall be forfeited to seller as liquidated damages." Plaintiff does not directly attack the validity of that provision. Cf. *Roth Develop. v. John Gen'l Contr.*, 263 Or 561, 503 P2d 493 (1972).

The "seller's closing instructions" on that document also provided that in the event of such a forfeiture the earnest money deposit should be retained by the broker "* * * to the extent of the agreed upon commission with residue to the seller." In this case the seller's attorney stated by letter that "Mr. Krupicka has no interest in Mr. Huszar's deposit with Certified Realty, according to the terms of the earnest money agreement."

At that time, however, seller's attorney was apparently acting under the mistaken impression that plaintiff had paid only $1,000 as earnest money and that he had not made the additional payment of $4,000 so as to make a total of $5,000, as actually paid by plaintiff as the earnest money subject to the forfeiture provisions of the agreement. Thus, because the broker's commission of $4,200 as payable to Certified was larger than the sum of $1,000 which seller's attorney then believed to be the only payment made by

plaintiff, it was not unnatural for him to make that statement.

Later, however, the attorney for Certified, as the broker representing the Krupickas as their agent, notified plaintiff that (as previously stated by the letter of September 9, 1971) the forfeiture of the entire earnest money payment of $5,000 "remains in full force and effect." Both Certified and the Krupickas, in their answer as defendants, also denied the allegations of plaintiff's complaint that they were "indebted" to him for the amount of $5,000 "had and received" by them for his "use."

Under these facts, and assuming, as contended by plaintiff, that the earnest money payment of $5,000, upon forfeiture, belongs to the Krupickas, as sellers, subject to the "sellers closing instructions" under which they agreed to pay $4,200 of that amount to Certified, there was no such disclaimer of "interest" by the Krupickas in that payment so as to provide a basis for plaintiff's contention that it must be returned to him.[2]

We have also considered plaintiff's remaining assignment of error, as well as various other contentions by plaintiff, and find that they have no merit.[3]

The judgment of the trial court is affirmed.

---

[2] Plaintiff cites Gosslin v. Martin, 56 Or 281, 107 P 958 (1910), and Medak v. DePrez, 236 Or 31, 386 P2d 805 (1963), for the proposition that the entire earnest money payment belongs to the seller and not being claimed by him, must be returned to plaintiff. Upon reading those cases we find that they involved different facts and do not require that result.

[3] Some of plaintiff's assignments of error also fail to comply with Rule 2.35, Rules of Procedure, Supreme Court of Oregon.