Argued May 9, reversed June 12, petition for rehearing
denied August 6, 1975

# GUILLORY CORPORATION, *Respondent, v.*
# DUSSIN INVESTMENT CO. ET AL, *Appellants.*

### 536 P2d 501

*James C. Maletis,* Portland, argued the cause for appellants. With him on the briefs was Paul Gerhardt, Portland.

*Gerald D. Wygant,* Portland, argued the cause for respondent. With him on the brief was Roger G. Rose, Portland.

TONGUE, J.

This is an action for damages for breach of an earnest money agreement for the sale of land near Beaverton. The case was tried before the court, without a jury. Defendants appeal from an adverse judgment in the sum of $23,584.40.

The complaint of plaintiff, the purchaser, alleges that defendants, the sellers, failed to perform the agreement in that they did not deliver a land sale contract to plaintiff for its acceptance until after June 30, 1971, the closing date as provided in the earnest money agreement; that the property was not then free and clear of all encumbrances, as previously represented and as required by the agreement; and that defendants, after first extending for six days the time for closing beyond June 30th (or until July 6th), then refused to perform the agreement according to its

terms despite the fact that "on or about July 8, 1971, plaintiff tendered to defendants and the escrow the sum of $40,000," representing the payment required by the earnest money agreement to be paid "upon closing."

The judgment of the trial court was based upon findings by it that at the time of plaintiff's tender of $40,000 on July 8, 1971, the property was not free and clear of all encumbrances, as required by the earnest money agreement, because of an unrecorded easement of which plaintiff had no previous knowledge, and that the land sale contract as previously presented by defendants (under which the sale would have been subject to the easement) did not comply with the terms of the earnest money agreement, from which the trial court concluded that plaintiff had no duty to tender performance by payment of $40,000 before July 5, 1971, and was not in default at the time that it sought to close the transaction on July 8, 1971. The trial court also held that the decision of this court in *Huszar v. Certified Realty Co.*, 266 Or 614, 512 P2d 982 (1973), "does not apply to this case," thus rejecting defendants' contention that a decision in this case in favor of defendants is required by *Huszar.*

*The facts.*

*1. Events prior to the closing date of June 30, 1971.*

By a standard Stevens-Ness form earnest money agreement dated March 21, 1971, plaintiff Guillory Corporation agreed to buy, and defendant Dussin Investment Co. agreed to sell, two acres of land near Beaverton for $111,000. The agreement provided that $40,000 was payable "upon closing" and, among "special conditions," that "To close on or before 30, June 1971." The agreement also included usual conditions requiring that sellers should furnish, "preliminary to closing," a title report showing willingness to insure title and, "in due course," a title policy; that

if sellers' title was not insurable "and cannot be made so within 30 days after the date of said preliminary title report," the earnest money should be refunded; that the property was to be conveyed free and clear of all encumbrances, excepting, among other things, "easements of record and all those of record"; that the transaction was to be closed in escrow with Pioneer National Title Ins. Co., and that "time is of the essence hereof."

Mr. Guillory then proceeded with plans for the construction of apartments on the property and to secure necessary permits for that purpose. On March 31st he made application to Sherwood and Roberts for a loan of funds for development of the project.

No instructions were given to the title company until June 21st, when the escrow officer at its Vancouver office instructed Keith Moulding, an escrow officer at its Portland "main office," to the effect that the broker handling the transaction (apparently on behalf of plaintiff) did not "want the title report ordered until next Tuesday," June 29th. This concerned Mr. Moulding, because the earnest money agreement provided for closing on or before June 30th and, therefore, he ordered a preliminary title report on about June 25th when he received a legal description of the property. That report was issued on June 28th and delivered to plaintiff on June 29th. Mr. Moulding testified that between June 21st and July 1st he was "in contact" with Mr. Guillory and informed him that an effort was being made to close the transaction. He also testified that on June 28th he called Guillory and asked if he would be ready to close by June 30th and that Guillory said "yes."

Meanwhile Mr. Dussin, according to his testimony, went twice a week between March 25th and May 10th to the office of the broker handling the transaction to inquire "how far are we from closing" and by

June 10th or 15th had "given up on that project" and it was not until about June 24th that he heard from the broker that plaintiff was "ready to close" and that the money would be forthcoming in a day or two. Mr. Dussin then started working with his attorney in getting the documents ready for the title company, including the preparation of the contract of sale. He also testified that from June 25th to 29th he kept asking Mr. Moulding if the $40,000 had been deposited in escrow and that he could have completed and submitted the contract and other documents on June 30th if the money had been deposited by that date. Mr. Dussin or his attorney did not, however, deposit a proposed contract of sale with the escrow officer until the next morning, July 1st.

According to Mr. Guillory, Mr. Moulding called him on June 28th and the "essence of the conversation" was that the financing had been "finalized" and that "everything * * * would be ready to close." He also testified that the preliminary title report was "probably" delivered to him on June 29th. That report showed that there were two mortgages on the property. He then called Dussin's lawyer to see if they could be "cleared" and he was informed on June 29th or 30th by Mr. Dussin that they had been satisfied or taken care of. He did not, however, deposit the $40,000 in escrow on or before June 30th and made no request for an extension of time to do so. He testified that the $40,000 would have been available on July 6th, but there was no evidence that it could have been paid into escrow by Mr. Guillory prior to that date. It appears, however, that as of June 30th Mr. Guillory had not refused to proceed and had not made any objection to the preliminary title report, but was proceeding in an attempt to close the transaction.

Thus, as of June 30, 1971, the transaction could not be closed by the escrow officer of the title com-

pany because neither the $40,000 nor a proposed contract of sale had been tendered or deposited. Neither did he have escrow instructions from either party as of that date, as were also necessary for the closing of the transaction on that date.

*2. Events subsequent to closing date of June 30, 1971.*

On the morning of July 1, 1971, Mr. Dussin or his attorney deposited in escrow a proposed contract of sale, dated as of June 30th and signed by Mr. Dussin. At that time escrow instructions for Mr. Dussin, as prepared by the escrow officer, were signed. Those instructions were prepared, however, to allow an additional 30 days to close the transaction, but were changed by Mr. Dussin's attorney to allow only five additional days for closing. At that time, however, Mr. Guillory was not notified of this extension and did not agree to it.

The proposed contract of sale provided that the property was to be subject to an unrecorded 40-foot easement which, according to Mr. Dussin, had been previously discussed with Mr. Guillory and his broker. That easement had not been mentioned in the earnest money agreement or the preliminary title report of June 28th because it was unrecorded.

The escrow officer, Mr. Moulding, testified that on July 1st he tried to call Mr. Guillory and was unable to do so, but that he talked to Mr. Guillory's secretary on that day and "stressed the urgency of Mr. Guillory to get in contact with me." Mr. Guillory testified that there was no record of any such call. The week end of July 4th then intervened, including the holiday of Monday, July 5th. On Tuesday, July 6th, according to Mr. Moulding, he talked to Mr. Guillory by telephone to say that he had the proposed contract of sale and that it was the last day to bring the money in. He also said that he then sent a copy to Mr. Guillory, at his

request. Mr. Guillory denied receiving such a call on July 6th.

In any event, either Mr. Guillory called Mr. Moulding back on the morning of July 7th to say that he had received the contract, or Mr. Moulding called him on that morning to say that Mr. Dussin had just come to the title company and "picked up the papers." Mr. Guillory testified that at that time he was just starting to read the proposed contract of sale and that he did not then have the $40,000, but that it had been verbally "committed." He also said that the funds would have been available on July 6th if he had been notified of the five-day extension.

On the next day, July 8th, on the basis of loan documents signed by Mr. Guillory and his wife, Sherwood and Roberts delivered to the escrow agent a letter stating that its check for $40,000 was enclosed. The escrow officer testified that the check was not enclosed, but was received later although he did not know when. On the same date the attorney for Mr. Guillory wrote letters to the title company and to Mr. Dussin demanding that the sale be closed. Those letters also objected to the unrecorded easement, as referred to in the contract of sale as proposed by Mr. Dussin and as also referred to in a further title report dated July 6th and prepared by the title company after receipt of that proposed contract. Mr. Guillory testified that he had no previous knowledge of that unrecorded easement and the trial court made a finding of fact to that effect.

Mr. Guillory's attorney also objected to the two mortgages shown by both title reports. It appears, however, that one mortgage was satisfied on June 30th and that the balance on the other mortgage could have been paid from the $40,000 down payment.

On July 31st a sale of the land was agreed

upon and closed, but at a higher price and at a higher rate of interest. From the proceeds of that sale $5,000 was paid to eliminate the unrecorded easement. Apparently, however, that sale was made without settlement of Mr. Guillory's claim for damages for alleged breach of the original earnest agreement by Mr. Dussin.

*Having failed to tender the down payment on the closing date and being then unable to do so, plaintiff is not entitled to demand damages for defendants' failure to tender a contract conveying good title.*

In this case plaintiff demands damages resulting from defendants' failure to tender a contract conveying good title despite the fact that he made no tender of the $40,000 down payment on or before the closing date as provided by the terms of the earnest money agreement and was unable to do so at that time.

As recently held in *Huszar v. Certified Realty Co., supra,* 266 Or at 620, payment of the down payment and delivery of a contract conveying good title were "concurrent conditions" by the terms of the earnest money agreement. In *Huszar* we also quoted with approval the following rule as first stated by this court in *Guthrie v. Thompson,* 1 Or 353, 355 (1861):

> "And, generally, where either party to such a contract seeks to enforce it by suit, he must first put the other party in default,—the vendor, by making and tendering the deed, and the vendee, by tendering the price and demanding a deed * * *."

██ Because of that rule a purchaser who fails to tender payment within the time provided by the terms of an earnest money agreement cannot ordinarily either demand damages for failure of the seller to convey good title or rescind the contract and recover earnest money previously paid. See also *Ward v.*

*James,* 84 Or 375, 380, 164 P 370, 164 P 372 (1917), and 3 Black on Rescission and Cancellation 1385, § 564 (2d ed 1929).

In some cases arising under earnest money agreements providing for delivery by the seller of a deed conveying good title or other similar performance concurrent with payment by the buyer, a buyer who does not tender payment may be excused from doing so because the seller is either unable to perform[1] or refuses to do so.[2]

*Huszar* was not such a case because, among other reasons, the encumbrances on the title to be conveyed resulted from mortgages and unpaid taxes which could have been satisfied or paid from the purchase money at the time of closing, with the result that the seller was not unable to perform, and there was no refusal of performance by the seller.[3]

Neither is this a case which falls within such an exception to the general rule, both for similar and different reasons. Insofar as there were mortgages on the property, it appears that such mortgages could

---

[1] See, e.g., *Lunde v. Minch,* 105 Conn 657, 136 A 552, 554 (1927); *Hodes v. Dunsky,* 5 NJ Super 333, 69 A2d 34 (1949); *Purcell v. Harper,* 52 Misc 2d 75, 275 NYS2d 153, 155 (1966); *Terzo v. Stratford,* 104 NYS2d 278, 281-82 (Sup Ct 1951); and *Raines v. Moran,* 54 NYS2d 194, 196 (Sup Ct 1944).

See also 6 Williston on Contracts 347-48 n.1, § 876 (3d ed 1962), and Annot., 40 ALR 693, 694-97 (1926).

Cf. *Brady v. E. Portland Sheet Metal Wks.,* 222 Or 584, 591, 352 P2d 144 (1960).

[2] See, e.g., *Anderson v. Wallowa National Bank,* 100 Or 679, 690, 198 P 560 (1921).

See also Williston on Contracts, *supra* note 1, and 4 Corbin on Contracts 920, § 977 (1951).

[3] The earnest money agreement in *Huszar v. Certified Realty Co.,* 266 Or 614, 512 P2d 982 (1973), also included provisions not included in the earnest money agreement in this case requiring written notice by the buyer to the seller of defects in title.

have been satisfied or that the mortgage balances could have been paid from the funds provided by down payment at the time of closing the transaction. Neither was there a refusal of performance by the seller in this case.

Insofar as there was an unrecorded easement, however, the case is somewhat different. The existence of such an easement may not have made it impossible to deliver a contract of sale for conveyance of good title, as shown by the fact that it was subsequently removed by payment of $5,000, an amount which could also have been paid from the $40,000 down payment. In addition, the existence of that easement was not known by the plaintiff at the time plaintiff failed to tender the $38,000 as the balance of the $40,000 down payment and thus did not, in fact, constitute the reason why that tender was not made.

■ This is an action for damages, in which plaintiff must necessarily affirm the existence and enforceability of the earnest money agreement as the basis for its claim for damages.[4] The earnest money agreement, by its express terms, was to expire on June 30, 1971, the date provided for the closing of the transaction, with "time of the essence," unless on or before that date the seller tendered a contract to convey good title and the buyer tendered the down payment. On June 30th neither party performed and although neither party refused to perform, neither party at that time either demanded performance by the other or claimed any excuse for its own failure to perform. It also appears that as of June 30th neither party was able to perform—plaintiff not then having $40,000 available for payment and defendants being unable at

---

[4] See Friedman, Contracts and Conveyances of Real Property 202, § 4.16 (2d ed 1963).

that time to convey title free and clear of the unrecorded easement.[5]

Under these facts, we hold that the earnest money agreement expired by its own terms on June 30, 1971.[6] Defendants' offer to extend the contract for five days was wholly unilateral and, in any event, there was no tender of payment by plaintiff within that five-day period.

It follows, in our opinion, that plaintiff was not entitled to subsequently revive the earnest money contract by making a tender of the $40,000 down payment and by claiming the existence of the subsequently discovered unrecorded easement as an excuse for failure to tender such performance when due by the terms of that contract. We hold that under these facts and for these reasons plaintiff is not entitled to prevail in an action at law against defendant Dussin Investment Co. for damages for breach of the same contract.[7]

The judgment of the trial court is reversed.

---

[5] See 6 Williston on Contracts, *supra* note 1, stating (at 876) that:

"Whether or not the purchaser must prove tender * * *, it is clear that if the vendor alleges and proves that the purchaser could not or would not have performed, the purchaser could not recover."

See also 6 Williston on Contracts, *supra* at 389, § 882.

[6] 6 Corbin on Contracts 26, § 1258 (1962), states:

"When two performances, agreed equivalents, are to be exchanged simultaneously, a tender of his performance by either one of the parties is a condition precedent to the duty of performance by the other. This is a case of so-called concurrent conditions. If time is of the essence in a case of this kind, the failure of both parties to make tender within the time limit operates as a discharge of the contract. * * *"

[7] For these same reasons, it also follows that the trial court erred in entering a personal judgment against defendant George Dussin.