# USINGER et ux, *Appellants,*

*v.*

# CAMPBELL, *Respondent.*

## (No. 48059, SC 25238)

572 P2d 1018

Sam Kyle, Albany, argued the cause for appellants. With him on the briefs was Emmons, Kyle, Kropp & Kryger, Albany.

Robert T. Scott, Albany, argued the cause for respondent. With him on the brief was Scott & Norman, Albany.

Before Denecke, Chief Justice, Tongue and Bryson, Justices, and Gillette, Justice Pro Tempore.

BRYSON, J.

**BRYSON, J.**

Plaintiffs brought this suit for specific performance of an earnest money agreement. The trial court denied specific performance and dismissed plaintiffs' complaint. Plaintiffs appeal.

The parties signed the earnest money agreement in December 1975. Pursuant to its terms, plaintiffs paid $250 as earnest money and were to pay $5,000 down and the balance of $4,750 "[u]pon acceptance of title and delivery of deed or contract * * *." The agreement provided, "SPECIAL CONDITIONS: Pending on septic tank approval and purchaser to have 60 days to sell own property. * * *" The agreement also provided, "Date of closing on or before March 15, 1976. * * * Possession of the above described premises is to be delivered to the purchaser on or before March 15, 1976 * * *. Time is of the essence of this contract."

The transaction was not closed on March 15. Plaintiffs testified that the realtor extended the time for tendering payment until March 18; the realtor denied this. Plaintiffs did not tender payment until March 18. Upon learning of this late payment, defendant refused to perform the agreement and this suit followed.

Defendant's answer to the complaint, in addition to a general denial, alleged two affirmative defenses: (1) that the agreement was too indefinite to be specifically enforced, and (2) that the plaintiffs had not performed the conditions required by the agreement, including obtaining septic tank approval, selling their property, and tendering payment on March 15. Plaintiffs' reply to defendant's second affirmative defense alleged that defendant had failed to tender a land sale contract on March 15, which was a condition precedent to plaintiffs' duty to tender the $4,750, and that defendant had waived the requirement that plaintiffs perform on the 15th.

The trial court made the following findings:

"1. The legal relationship created between the parties is not capable of being specifically enforced.

"2. The earnest money agreement executed by the parties is not sufficiently definite and certain for specific performance.

"3. The payment of the $4,750.00 by plaintiff[s] was equivocal in nature.

"4. The plaintiffs have failed to establish either waiver or estoppel as alleged in their reply."

■ The parties' briefs are principally devoted to a discussion of whether the earnest money agreement was sufficiently definite to be specifically enforced. We do not reach this issue, however, because we are of the opinion that defendant should prevail, as here contended, on her second affirmative defense that plaintiffs' failure to tender the down payment on March 15 prevents them from obtaining specific performance.[1]

■■ In *Guillory Corp. v. Dussin Investment,* 272 Or 267, 536 P2d 501 (1975), we held that where time is of the essence, and payment of the down payment and delivery of the land sale contract are concurrent conditions,

"* * * a purchaser who fails to tender payment within the time provided by the terms of an earnest money agreement cannot ordinarily either demand damages for failure of the seller to convey good title or rescind the contract and recover earnest money previously paid. * * *" 272 Or at 274.

In *Guillory,* the purchaser tendered the down payment eight days late and showed no excuse for its lateness, such as seller's inability or refusal to perform. We said, "Under these facts, we hold that the earnest money agreement expired by its own terms" on the date for performance. 272 Or at 277. The same reasoning applies to this suit for specific performance. Here the plaintiff purchaser did not offer evidence that defendant seller was unable to perform on the

---

[1] It also appears that plaintiffs did not sell their home or obtain septic tank approval by March 15. However, since those conditions were for the benefit of plaintiffs, the nonoccurrence of the conditions would not excuse defendant's performance. However, their nonoccurrence does bear on the question of whether the parties seriously intended to go through with the sale.

closing date of March 15. Also, in this case, the contract provided that "time is of the essence of this contract." By the same token, if the defendant seller had attempted to tender a land sale contract with marketable title on March 18, after the agreed closing date of March 15, she would not have been able to prevail for the same reason—the contract provided for closing on March 15 and time was of the essence.

■ In seeking specific performance, plaintiffs necessarily rely on the terms of the earnest money agreement, but "by its own terms" the agreement expired on March 15. Although the powers of an equity court are broad, they do not permit the court to rewrite the contract for the parties. *Wikstrom v. Davis,* 211 Or 254, 268, 315 P2d 597 (1957).

■ Plaintiffs argue that defendant's failure to tender a land sale contract on March 15 was a breach of the agreement that excused plaintiffs from their duty to tender the down payment. However, we have previously construed language such as that used in the present agreement to create conditions concurrent. *Huszar v. Certified Realty Co.,* 266 Or 614, 620, 512 P2d 982 (1973). Under such language, "a tender of his performance by either one of the parties is a condition precedent to the duty of performance by the other." 6 Corbin on Contracts 26, § 1258 (1962). Since plaintiffs did not perform on the 15th, defendant's duty to perform did not arise and her failure to perform was not a breach of the agreement.

Plaintiffs also argue that defendant's real estate agent, McPherson, orally extended the time for performance. There was conflicting evidence on this issue. McPherson testified:

"Q. Did you at any time ever tell Usingers that they could have an extension beyond the March 15 closing date?
"A. I believe that I told them that by placing their money in escrow prior to March 15 or on that date, that that in my opinion did complete their part of the

agreement and that would constitute their compliance with the agreement.

"* * * * *.

"Q. Do you recall ever telling them that they could have until March 18 or any other later date to deposit the money?

"A. I don't recall that.

"* * * * *.

"Q. Did you at any time ever tell Mr. Usinger to the best of your recollection that he could delay payment after the 15th of March?

"A. I don't recall whether I did. I don't recall doing that.

"* * * * *.

"Q. Mr. McPherson, you say you don't recall agreeing with the Usingers that there could be a delay. Is it possible that you so agreed?

"A. I don't believe so. I remember very distinctly they had been ill during the time when they were digging the holes for the septic permit and it was quite stormy and they were delaying doing that while they were ill because as I recall, and I made it a point with them, that it would be difficult to get an extension but that if they did in fact perform by paying their money and doing all the other things that they had done to get the septic permit, that in my opinion they were in fact doing what was required under the contract.

"* * * * *.

"A. I had understood that it was deposited on the 15th.

"Q. What had given you that understanding, Mr. McPherson?

"A. I gathered it from the phone conversation with them and with our earlier conversations that it must be done by the 15th.

"* * * * *.

"Q. And didn't you in your conversation with them advise them that you had granted an extension for the payment of the down payment in this transaction?

"A. No.

"Q. You sure of that? Search your recollection. You sure you did not tell someone at the real estate board

[ 756 ]

that you granted an extension for the payment of the money?

"A.   No."

Mr. Usinger testified that McPherson orally told him on March 15 that plaintiffs could make the $4,750 payment provided in the earnest money agreement within a week. He testified:

"Q.   * * * 'And what was the conversation between yourself and McPherson in that regard?'

"A.   I asked him about an extension because the 15th of March was coming up and there wasn't enough time to dig more holes and get an approval for a septic permit by that time. He said that, I believe, that he couldn't give me a written extension but there was no problem because that was covered in the earnest money contract, it's stated there that it was pending septic tank approval, so until we got septic tank approval, there was no problem.

"Q.   Now, this was prior to March 15?

"A.   Yes, it was.

"* * * * *.

"Q.   What was said between you and Mr. McPherson concerning the matter of the payment of the sum of $4,750 in this conversation?

"A.   He said that it would be a good thing to show our good faith if we would put the down payment money into escrow at that time by the 15th.

"* * * * *.

"Q.   And what was the nature of that conversation on March 15?

"A.   Well, over the weekend the wife and I both come down with some kind of a flu—I don't know what it was—but we were both of us real bad sick. * * * I told him that we were both sick and unless it was just absolutely positively necessary for us to have the money in the escrow company on the 15th, that we'd like to make it at a later date, if possible, because neither one of us were well enough to even go outside, let alone clear into town.

"Q.   What was his reply to that?

"A.   He said as long as we had it there by the end of the week that there would be no problem."

It is unclear just how Mr. Usinger learned of the time extension above-testified to because Mrs. Usinger testified:

"A.  * * * On Monday the 15th my husband called Mr. McPherson and told him that we were both very sick and that we could not go down and get the money and take it into escrow unless it was absolutely necessary. * * * He told us then, *and it was me that he told this, he told me* as long as it was there by the end of the week he could see no problem since we were ill. * * *" (Emphasis added.)

It appears that Mr. Usinger must have learned of the time extension from his wife. On March 15 the plaintiffs had not been assured that they would receive septic tank approval for the property, and the records of the Linn County Environmental Health Services show that Mr. Usinger did not want to use the available site "on the knoll" as it would "require pumping."

The resolution of this case, therefore, depends on whether the Usingers carried their burden of persuasion and showed, by a preponderance of the evidence, that McPherson granted them an extension.

The trial court found that the plaintiffs had failed to carry their burden of proof and failed to prove that defendant waived the time essence clause.

We have reviewed all of the testimony and exhibits. Although we review this case de novo, we give "substantial weight to the trial court's appraisal of conflicting testimony * * *." *Lichty v. Merzenich,* 278 Or 209, 213, 563 P2d 690 (1977). We see no reason to disturb the trial court's finding on the issue that defendant did not grant the plaintiffs an extension of time for payment as provided in the earnest money agreement and did not waive the time essence clause.

Plaintiffs finally argue that defendant should not have been awarded attorney fees. The earnest money

agreement specifically provided for such fees.[2] Plaintiffs argue, however, that defendant "elected to rescind the earnest money agreement," thus bringing this case under the rule of *Pickinpaugh v. Morton,* 268 Or 9, 519 P2d 91 (1974). *Pickinpaugh* is distinguishable from the case at bar. In that case plaintiff came into court seeking a rescission of the contract. The trial court allowed rescission and this court affirmed. We relied upon 3 H. Black, Rescission and Cancellation § 583 (1916), for the proposition that the plaintiff could not assert that the contract should be rescinded and at the same time rely on a provision therein for the recovery of attorney fees. In this case, the plaintiffs contend there was a contract and ask for specific performance. This requires the defendant to come into court and defend, also relying on the contract by stating that it was not performed in accordance with its terms. Defendant does not disaffirm the contract but relies on the exact terms thereof. Therefore, the provision in the contract providing for attorney fees applies.

Affirmed.

---

[2] "* * * If suit or action is filed on this contract, the party not prevailing agrees to pay the prevailing parties' reasonable attorney fees which shall be fixed by the court or courts in which the suit or action, including any appeal therein, is tried, heard or decided."